# EXHIBIT A

**Signed October 24, 2023 HELOC Loan Package**

(47 pages)

Rev. 01/23

# FACTS — WHAT DOES TRUSTMARK DO WITH YOUR PERSONAL INFORMATION?

| | |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number and income<br>■ account balances and payment history<br>■ credit history and credit scores<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Trustmark chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Trustmark share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes–** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | YES | NO |
| **For our marketing purposes–** to offer our products and services to you | YES | NO |
| **For joint marketing with other financial companies** | YES | NO |
| **For our affiliates' everyday business purposes–** information about your transactions and experiences | YES | NO |
| **For our affiliates' everyday business purposes–** information about your creditworthiness | YES | YES |
| **For our affiliates to market to you** | YES | YES |
| **For nonaffiliates to market to you** | NO | NO |

| | |
|---|---|
| **To limit our sharing** | ■ Call 1-800-844-4357<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
| **Questions?** | Call 1-800-844-4357 |

Rev. 01/23

Page 2

| Who we are | |
|---|---|
| **Who is providing this notice?** | Trustmark National Bank |

| What we do | |
|---|---|
| **How does Trustmark protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We restrict access to your personal and account information to those associates with proper authorization to access such information. |
| **How does Trustmark collect my personal information?** | We collect your personal information, for example, when you<br><br>■ open an account or apply for a loan<br>■ make deposits or withdrawals from your account<br>■ use your credit or debit card<br>■ apply for insurance<br><br>We also collect your personal information from others, such as credit bureaus. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>■ sharing for affiliates' everyday business purposes–information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choice will apply to everyone on your account. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>The Trustmark Corporation Family of Companies:<br><br>Trustmark National Bank and FBBINSURANCE, Inc. |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>■ do not share |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>■ our joint marketing partners can include institutions such as insurance companies. |

Trustmark

# Consumer Loan Application

## 1. Loan Information (Mark one or more of the following to indicate the type of loan(s) you are requesting.)

| | | |
|---|---|---|
| ☐Line of Credit | | (Credit limit requested) |
| ☐Unsecured Term Loan | | (Loan amount requested) |
| ☐Secured Loan: | | (Loan amount requested) |
| ☒Home Equity Line of Credit | $55,003.00 | (Credit limit requested) |
| ☐Home Equity Loan | | (Loan amount requested) |
| ☐Credit Card* Refer to the enclosed Summary of Credit Terms for Credit Card Rates and Fees. | | (Credit limit assigned by Trustmark) |

PURPOSE OF LOAN Home Equity Line of Credit

IMPORTANT INFORMATION ABOUT OPENING A NEW ACCOUNT: To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you is that when you open an account, we will ask you for your name, street address (P.O. Boxes are not allowed under Federal law), date of birth and other information (including your Social Security or Taxpayer Identification Number) that allows us to identify you. We may also ask to see your driver's license or other identifying documents when appropriate.

## 2. Applicant Information

| | | | | |
|---|---|---|---|---|
| APPLICANT NAME<br>ALEKSANDAR MUSULIN | SOCIAL SECURITY NUMBER<br>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 | | DATE OF BIRTH<br>4/2/1966 | HOME PHONE<br>(281) 919-4040 |
| PHYSICAL STREET ADDRESS<br>2319 PERKINS CROSSING DR | CITY<br>Conroe | STATE<br>TX | ZIP CODE<br>77304 | TIME AT ADDRESS<br>3 YRS 8 MOS |
| MAILING ADDRESS<br>2319 PERKINS CROSSING DR | CITY<br>Conroe | STATE<br>TX | ZIP CODE<br>77304 | |
| LANDLORD OR MORTGAGE HOLDER NAME<br>CHASE BANK | MONTHLY HOUSING PAYMENT<br>$1,307.49 | | ☒Own/Buying ☐Rent/Lease ☐Other | |
| EMPLOYER NAME<br>HUMALYTIC INC ☐Self Employed ☐Retired | WORK PHONE | | HOW LONG?<br>4 YRS | GROSS MONTHLY INCOME<br>$9,533.00 |
| EMPLOYMENT POSITION<br>COO | PREVIOUS EMPLOYER | | | HOW LONG? |
| MARITAL STATUS (If applying for individual unsecured credit, do NOT complete this section.) | ☒Married ☐Separated ☐Unmarried | | | |
| BANK NAME (See ACTion for Deposit Relationships) | BANK NAME (See ACTion for Deposit Relationships) | | | |

## 3. Co-Applicant Information (Complete this section if another person will be jointly obligated on the loan(s). Regardless of your marital status, you may apply for individual credit in your own name.)

| | | | | |
|---|---|---|---|---|
| CO-APPLICANT NAME | SOCIAL SECURITY NUMBER | | DATE OF BIRTH | HOME PHONE |
| PHYSICAL STREET ADDRESS | CITY | STATE | ZIP CODE | TIME AT ADDRESS |
| MAILING ADDRESS | CITY | STATE | ZIP CODE | |
| LANDLORD OR MORTGAGE HOLDER NAME | MONTHLY HOUSING PAYMENT | | ☐Own/Buying ☐Rent/Lease ☐Other | |
| EMPLOYER NAME ☐Self Employed ☐Retired | WORK PHONE | | HOW LONG? | GROSS MONTHLY INCOME |
| EMPLOYMENT POSITION | PREVIOUS EMPLOYER | | | HOW LONG? |
| MARITAL STATUS (If applying for individual unsecured credit, do NOT complete this section.) | ☐Married ☐Separated ☐Unmarried | | | |
| BANK NAME (See ACTion for Deposit Relationships) | BANK NAME (See ACTion for Deposit Relationships) | | | |

## 4. Co-Signer Information (If Applicable)

| | | | | |
|---|---|---|---|---|
| CO-SIGNER NAME | SOCIAL SECURITY NUMBER | | DATE OF BIRTH | HOME PHONE |
| PHYSICAL STREET ADDRESS | CITY | STATE | ZIP CODE | TIME AT ADDRESS |
| MAILING ADDRESS | CITY | STATE | ZIP CODE | |
| LANDLORD OR MORTGAGE HOLDER NAME | MONTHLY HOUSING PAYMENT | | ☐Own/Buying ☐Rent/Lease ☐Other | |
| EMPLOYER NAME ☐Self Employed ☐Retired | WORK PHONE | | HOW LONG? | GROSS MONTHLY INCOME |
| EMPLOYMENT POSITION | PREVIOUS EMPLOYER | | | HOW LONG? |
| MARITAL STATUS (If applying for individual unsecured credit, do NOT complete this section.) | ☐Married ☐Separated ☐Unmarried | | | |
| BANK NAME (See ACTion for Deposit Relationships) | BANK NAME (See ACTion for Deposit Relationships) | | | |

## 5. Additional Monthly Income (Notice: You may list income from alimony, child support, or separate maintenance unless you do not want us to consider it for the purpose of granting credit.)

| | |
|---|---|
| APPLICANT'S ADDITIONAL MONTHLY INCOME | SOURCE OF APPLICANT'S ADDITIONAL MONTHLY INCOME |
| CO-APPLICANT'S ADDITIONAL MONTHLY INCOME | SOURCE OF CO-APPLICANT'S ADDITIONAL MONTHLY INCOME |
| CO-SIGNER'S ADDITIONAL MONTHLY INCOME | SOURCE OF CO-SIGNER'S ADDITIONAL MONTHLY INCOME |

## 6. Agreements and Signatures

By signing below, I (including any co-applicant) agree, "I" means both the primary member and the co-applicant for loans and each authorizes the other to obtain advances individually and agrees to be jointly responsible for paying all amounts owed. For Credit Card applications, if approved, I agree that I am bound by the terms and conditions of the Cardholder Agreement that will be mailed to me, and the Account will be governed by Mississippi and federal law. Subject to all applicable state and federal laws, I also agree you are authorized to check my credit, employment history and current income; the information I have given in this Consumer Loan Application is accurate, complete, true, and submitted for the purpose of obtaining or becoming eligible for credit now and/or later; loan obligations secured by real property or a dwelling will be governed by the terms of the loan documents applicable to my loan request; if there are changes in my financial situation, I agree I will let Trustmark know as soon as they occur; I will provide Trustmark with whatever financial information that may be requested so that Trustmark may remain informed about my financial situation; all of the credit or other information concerning me which Trustmark may obtain now or in the future will be compiled, stored, and used in accordance with Trustmark's Privacy Statement, including any changes that may be made from time to time; the application for this request contains information that Trustmark is authorized to use, including but not limited to the credit bureau report, in consideration for other bank products; I have been advised of all other similar loan products offered throughout Trustmark, both in the mortgage area and also in the retail branches, for which I may be eligible; however, I have chosen to apply for the specific loan product indicated on this application.

| | |
|---|---|
| APPLICANT SIGNATURE [signature] | (If you are a co-signer, do NOT initial or sign this section.)<br>☐ We intend to apply for joint credit. (Initial or Sign) |
| CO-APPLICANT SIGNATURE | |
| CO-SIGNER SIGNATURE | APPLICANT CO-APPLICANT |

Loan ID: 19026530 Trustmark - NMLSR #: 449605 Lilibeth Trigo - NMLSR #: 594007

# TRUSTMARK INTEREST ONLY EQUITY LINE ("ACCOUNT") EARLY DISCLOSURE

| | | | |
|---|---|---|---|
| Borrower: | ALEKSANDAR MUSULIN<br>2319 PERKINS CROSSING DR<br>CONROE, TX 77304 | Lender: | Trustmark National Bank<br>Texas Pasadena Branch<br>4660 East Sam Houston Parkway South<br>Pasadena, TX 77505<br>NMLS 594007 |

## IMPORTANT TERMS OF OUR TRUSTMARK INTEREST ONLY EQUITY LINE ("ACCOUNT") EARLY DISCLOSURE

**This disclosure contains important information about our TX Trustmark Interest Only Home Equity Line of Credit - 2023 (the "Plan" or the "Credit Line"). You should read it carefully and keep a copy for your records.**

**AVAILABILITY OF TERMS.** All of the terms of the Plan described herein are subject to change. If any of these terms change (other than the ANNUAL PERCENTAGE RATE) and you decide, as a result, not to enter into an agreement with us, you are entitled to a refund of any fees that you paid to us or anyone else in connection with your application.

**SECURITY INTEREST.** We will take a security interest in your home. You could lose your home if you do not meet the obligations in your agreement with us.

**POSSIBLE ACTIONS.** Under this Plan, we have the following rights:

**Termination and Acceleration.** We can terminate the Plan and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happens:

(a) You commit fraud or make a material misrepresentation at any time in connection with the Plan. This can include, for example, a false statement about your income, assets, liabilities, or any other aspect of your financial condition.

(b) You do not meet the repayment terms of the Plan.

(c) Your action or inaction adversely affects the collateral for the Plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your credit limit during any period in which any of the following are in effect:

(a) The value of your dwelling declines significantly below the dwelling's appraised value for purposes of the Plan. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(b) We reasonably believe that you will be unable to fulfill your payment obligations under the Plan due to a material change in your financial circumstances.

(c) You are in default under any material obligation of the Plan. We consider all of your obligations to be material. Categories of material obligations include, but are not limited to, the events described above under Termination and Acceleration, the obligation to not exceed your Credit Limit, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the dwelling or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the dwelling, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions).

(d) We are precluded by government action from imposing the annual percentage rate provided for under the Plan.

(e) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of the credit limit.

(f) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

(g) The maximum annual percentage rate under the Plan is reached.

**Change in Terms.** We may make changes to the terms of the Plan if you agree to the change in writing at the time.

**Fees and Charges.** In order to open and maintain an account, you must pay certain fees and charges.

**Lender Fees.** The following fees must be paid to us:

| Description | Amount | When Charged |
|---|---|---|
| Overlimit Charge: | $15.00 | At the time your Credit Line balance exceeds your credit limit |
| Photocopying Charges: | $5.00 | At the time of your request |

**Late Charge.** If we do not receive your Minimum Payment within fifteen (15) days of the "Payment Due Date" shown on your periodic statement, we will apply a Late Payment Charge to your Account of $15.00.

**Third Party Fees.** You must pay certain fees to third parties such as appraisers, credit reporting firms, and government agencies. These third party fees generally total between $681.50 and $6,643.30. We estimate the breakdown of these as follows:

| Description | Amount | When Charged |
|---|---|---|
| Title Fees to include Abstract: | $100.00 to $355.00 | *At Closing. |
| Recording Fees: | $52.00 to $88.00 | *At Closing. |
| Appraisal Fees: | $100.00 to $600.00 | *At Closing. Regardless of the amount of the line, appraisals on a home of 5 acres or more could result in a cost to the customer. |
| Survey Fees: | $0.00 to $1,500.00 | At Closing. Regardless of the amount of the line, customer will pay cost of all required surveys. |
| Lender's Title Insurance Fees: | $422.50 to $4093.30^ | *At Closing. |
| Flood Certification Fee: | $7.00 | *At Closing. |

**PROPERTY INSURANCE.** You must carry insurance on the property that secures the Plan.

**MINIMUM PAYMENT REQUIREMENTS.** You can obtain advances of credit during the following period: ten (10) years from the date of the Agreement (the "Draw Period"). After the Draw Period ends, the repayment period will begin. You will no longer be able to obtain credit advances. The length of the repayment period is as follows: ten (10) years beginning at the completion of the Draw Period. Your Regular Payment will equal the amount of your accrued FINANCE CHARGES ("First Payment Stream"). Your payments will be due monthly. This means that you have a monthly billing cycle. Your First Payment Stream will last for the first 120 billing cycles. Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment. The Minimum Payment during the First Payment Stream will not reduce the principal that is outstanding on your Credit Line.

After completion of the First Payment Stream, your Regular Payment will be based on an amortization of your balance at the start of this payment period as shown below ("Second Payment Stream"). Your payments will be due monthly.

| Range of Balances | Number of Payments | Amortization Period |
|---|---|---|
| All Balances | 120 | 120 payments |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges.

A change in the ANNUAL PERCENTAGE RATE can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, so more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance. If this happens, we may adjust your payment as follows: your payment may be increased by the amount necessary to repay the balance by the end of this payment stream. Each time the ANNUAL PERCENTAGE RATE changes, we will review the effect the change has on your Credit Line Account to see if your payment is sufficient to pay the balance by the Maturity Date. If it is not, your payment will be increased by an amount necessary to repay the balance by the Maturity Date.

**MINIMUM PAYMENT EXAMPLE.** If you made only the minimum payment and took no other credit advances, it would take 20 years to pay off a credit advance of $10,000.00 at an ANNUAL PERCENTAGE RATE of 8.500%. During that period, you would make 120 monthly payments

## TRUSTMARK INTEREST ONLY EQUITY LINE ("ACCOUNT") EARLY DISCLOSURE (Continued)



ranging from $65.21 to $72.19. Then you would make 120 monthly payments ranging from $123.17 to $123.99.

**TRANSACTION REQUIREMENTS.** The following transaction limitations will apply to the use of your Credit Line:

**In Person Request Limitations.** The following transaction limitations will apply to your Credit Line and requesting an advance in person.

**Minimum Advance Amount. Pursuant to Section 50(t)(2), Article XVI, Texas Constitution, the minimum amount of any credit advance that can be made on your Credit Line is $4,000.00.**

**Other Transaction Requirements.** You cannot use an advance on your Credit Line to repay any amounts due under the terms of the Equity Line Agreement and Disclosure Statement.

**TAX DEDUCTIBILITY.** You should consult a tax advisor regarding the deductibility of interest and charges for the Plan.

**ADDITIONAL HOME EQUITY PROGRAMS.** Please ask us about our other available Home Equity Line of Credit plans.

**VARIABLE RATE FEATURE.** The Plan has a variable rate feature. The ANNUAL PERCENTAGE RATE (corresponding to the periodic rate), and the minimum payment amount can change as a result. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

**THE INDEX.** The annual percentage rate is based on the value of an index (referred to in this disclosure as the "Index"). The Index is the "Wall Street Journal" Published Prime Rate. Information about the Index is available or published in "The Wall Street Journal". We will use the most recent Index value available to us as of the first day of each billing cycle for any annual percentage rate adjustment.

**ANNUAL PERCENTAGE RATE.** To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (366 during leap years). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (366 during leap years). This result is the ANNUAL PERCENTAGE RATE for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (366 during leap years). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (366 during leap years). This result is the ANNUAL PERCENTAGE RATE for your Second Payment Stream. A change in the Index rate generally will result in a change in the ANNUAL PERCENTAGE RATE. The amount that your ANNUAL PERCENTAGE RATE may change also may be affected by the lifetime annual percentage rate limits, as discussed below.

Please ask us for the current Index value, margin and annual percentage rate. After you open a credit line, rate information will be provided on periodic statements that we send you.

**FREQUENCY OF ANNUAL PERCENTAGE RATE ADJUSTMENTS.** Your ANNUAL PERCENTAGE RATE can change during the Draw Period (First Payment Stream), the first day of each billing cycle for your account following an index change.

During the Repayment Period (Second Payment Stream), we will calculate your ANNUAL PERCENTAGE RATE by adding the Margin to the Index in affect sixty (60) days prior to the tenth (10th) anniversary date of the Agreement. Your ANNUAL PERCENTAGE RATE during the Repayment Period will be adjusted on the tenth (10th) anniversary date of the Agreement and annually thereafter. There is no limit on the amount by which the annual percentage rate can change during any one year period. However, under no circumstances will your ANNUAL PERCENTAGE RATE exceed 18.000% per annum or, go below 7.500% per annum at any time during the term of the Plan.

**MAXIMUM RATE AND PAYMENT EXAMPLE.**

**Draw Period.** If you had an outstanding balance of $10,000.00, the minimum payment at the maximum ANNUAL PERCENTAGE RATE of 18.000% would be $152.88. This ANNUAL PERCENTAGE RATE could be reached immediately or prior to the 1st payment.

**Repayment Period.** If you had an outstanding balance of $10,000.00, the minimum payment at the maximum ANNUAL PERCENTAGE RATE of 18.000% would be $180.17. This ANNUAL PERCENTAGE RATE could be reached at the time of the 1st payment during the repayment period.

**PREPAYMENT.** You may prepay all or any amount owing under the Plan at any time without penalty.

**HISTORICAL EXAMPLE.** The example below shows how the ANNUAL PERCENTAGE RATE and the minimum payments for a single $10,000.00 credit advance would have changed based on changes in the Index from 2009 to 2023. The Index values are from the following reference period: last business day of January of each year. While only one payment per year is shown, payments may have varied during each year. Different outstanding principal balances could result in different payment amounts.

The table assumes that no additional credit advances were taken, that only the minimum payments were made, and that the rate remained constant during the year. It does not necessarily indicate how the Index or your payments would change in the future.

**INDEX TABLE**

| | Year (last business day of January of each year) | Index (Percent) | Margin (1) (Percent) | ANNUAL PERCENTAGE RATE | Monthly Payment (Dollars) |
|---|---|---|---|---|---|
| Draw Period | 2009 | 3.250 | 1.000 | 7.500 (8) | 63.70 |
| | 2010 | 3.250 | 1.000 | 7.500 (8) | 63.70 |
| | 2011 | 3.250 | 1.000 | 7.500 (8) | 63.70 |
| | 2012 | 3.250 | 1.000 | 7.500 (8) | 63.70 |
| | 2013 | 3.250 | 1.000 | 7.500 (8) | 63.70 |
| | 2014 | 3.250 | 1.000 | 7.500 (8) | 63.70 |
| | 2015 | 3.250 | 1.000 | 7.500 (8) | 63.70 |
| | 2016 | 3.500 | 1.000 | 7.500 (8) | 63.70 |
| | 2017 | 3.750 | 1.000 | 7.500 (8) | 63.70 |
| | 2018 | 4.500 | 1.000 | 7.500 (8) | 63.70 |
| Repayment Period | 2019 | 5.500 | 1.000 | 7.500 (8) | 118.70 |
| | 2020 | 4.750 | 1.000 | 7.500 (8) | 118.70 |
| | 2021 | 3.250 | 1.000 | 7.500 (8) | 118.70 |
| | 2022 | 3.250 | 1.000 | 7.500 (8) | 118.70 |
| | 2023 | 7.500 | 1.000 | 8.500 | 122.06 |

(1) This is a margin we have used recently; your margin may be different.

(8) This A.P.R. reflects a 7.500 percent floor.

***TITLE INSURANCE.** Title insurance estimates are based on line amounts ranging from $10,000.00 to $500,000.00.

***FEES PAID BY TRUSTMARK.** If a new credit line or an increase in an existing credit line has a credit limit of $20,000.00 up to and including $250,000.00 and new money to Trustmark is $20,000.00 or more the bank may pay the closing costs, with the following exceptions. Appraisals on homes with more than 5 acres could result in costs to the customer. Also, customer will pay the cost of any required surveys.

**HANDBOOK.** We are providing you with a copy of the handbook entitled "What You Should Know About Home Equity Lines of Credit".

**ADDITIONAL SUSPENSION LANGUAGE.** If we temporarily prohibit extensions of credit and/or reduce your credit limit because any of the conditions listed in the Suspension or Reduction section exist, we will mail or deliver a written notice of such action, including the reason for it, to each person who is affected, within 3 business days after the time such action is taken. If your ability to obtain extensions of credit has been halted or your credit limit reduced, at the banks option, you will have to make a written request to us for reinstatement of your credit privileges or credit limit to its prior level before we will consider such reinstatement. If you make such a request, we will investigate and determine whether the condition which caused the suspension or reduction has changed. You will be notified of our reinstatement action or we will advise you that our prior action remains in effect. If the condition which caused the suspension or reduction has changed but another condition warranting continued temporary suspension of credit and/or reduction of credit limit or Account termination is discovered by us, we may react to such new information in a manner consistent with the Agreement.

**TRUSTMARK NATIONAL BANK ORIGINATION CO. NMLSR ID #: 449605.**

**FEE LIMITATION.** You will not be charged or required to pay fees in excess of two percent (2%) of the original line amount. This limitation

excludes certain fees such as appraisal, survey, title insurance and title examination. The fee exclusions are more fully described in Section 50(a)(6)(E), Article XVI, Texas Constitution.

LaserPro, Ver. 22.4.0.066 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved.

*L-9350-A000019026530-F0000000000000000-P01*

# NOTICE OF PENALTIES FOR MAKING FALSE OR MISLEADING WRITTEN STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Applicant:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

## Warning:

**Intentionally or knowingly making a materially false or misleading written statement to obtain property or credit, including a mortgage loan, is a violation of Section 32.32, of the Texas Penal Code, and, depending on the amount of the loan or value of the property, is punishable by imprisonment for a term of 2 years to 99 years and a fine not to exceed $10,000.**

**I/we, the undersigned home loan applicant(s), represent that I/we have received, read, and understand this notice of penalties for making a materially false or misleading written statement to obtain a home loan.**

**I/we represent that all statements and representations contained in my/our written home loan application, including statements or representations regarding my/our identity, employment, annual income, and intent to occupy the residential real property secured by the home loan, are true and correct as of the date of loan closing.**

APPLICANT:

X [signature] 10/24/23
Aleksandar Musulin Date

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF Texas )
) SS
COUNTY OF Harris )

BEVERLY DAVENPORT
NOTARY PUBLIC
STATE OF TEXAS
ID 12414198-8
EXP. 03-11-2026

Before me, the undersigned notary, on the 24 day of October, 20 23 personally appeared **Aleksandar Musulin**, a person(s) whose identity is known to me. After I administered an oath to him/her/them, he/she/they said he/she/they read the above notice and that the facts stated therein are within his/her/their personal knowledge and are true and correct.

[signature: Beverly Davenport]
Notary Public in and for the State of Texas

*T-7065-V1-P1*

# NOTICE CONCERNING EXTENSIONS OF CREDIT

**NOTICE CONCERNING EXTENSIONS OF CREDIT**
**DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:**

SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES THAT:

(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S SPOUSE;

(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME;

(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL FRAUD;

(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER;

(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 2 PERCENT OF THE LOAN AMOUNT, EXCEPT FOR A FEE OR CHARGE FOR AN APPRAISAL PERFORMED BY A THIRD PARTY APPRAISWER, A PROPERTY SURVEY PERFORMED BY A STATE REGISTERED OR LICENSED SURVEYOR, A STATE BASE PREMIUM FOR A MORTGAGEE POLICY OF TITLE INSURANCE WITH ENDORESEMENTS, OR A TITLE EXAMINATION REPORT;

(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME UNLESS IT IS A HOME EQUITY LINE OF CREDIT;

(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

(I) (repealed);

(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER, AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN, UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY;

(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER;

(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN;

(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

(5) PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING;

(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

(R) IF THE LOAN IS A HOME EQUITY LINE OF CREDIT:

(1) YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT;

(2) EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $4,000;

(3) YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT;

(4) ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE;

(5) THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED;

(6) IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 80 PERCENT OF THE FAIR MARKET VALUE; AND

(7) THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT.

THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE.

EACH UNDERSIGNED OWNER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS NOTICE AND HAVING RECEIVED A COPY OF THIS NOTICE.

THIS NOTICE IS DATED 9/6/23

X ____________________ Grantor's Signature

X ____________________ Grantor's Signature

X ____________________ Grantor's Signature

X ____________________ Grantor's Signature

*L-9026-A000019026530-F0000000000000000-P01*

# ACKNOWLEDGEMENT OF RECEIPT OF PRECLOSING DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14504 N. W. Freeway
Houston, TX 77040

Owner(s):
Aleksandar Musulin
Elena Yaneva

Line Amount:
$55,000.00

Collateral Address:
2319 Perkins Crossing Drive
Conroe, TX 77304

Each undersigned owner acknowledges having received on this date a copy of (a) the Trustmark Interest Only Equity Line Agreement and Disclosure Statement, which itemizes the fees, points, interest, costs and charges that will be charged at closing and (b) a copy of the final Loan Application. This date is at least one business day prior to the line closing, currently scheduled to close on October 24, 2023.

Dated: 10/19/23

______________________ (Owner)
Aleksandar Musulin

______________________ (Owner)
Elena Yaneva

Attachment: Trustmark Interest Only Equity Line Agreement and Disclosure Statement
Copy of the final Loan Application

LaserPro, Ver. 23.4.0.056 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX

*L-9010-A000019026530-F0000000000000000-P01*

# TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**CREDIT LIMIT: $55,000.00** **DATE OF AGREEMENT: October 24, 2023**

**THE CREDIT EVIDENCED BY THIS TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT IS AN EXTENSION OF CREDIT DEFINED BY AND SUBJECT TO SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.**

**Introduction.** This Trustmark Interest Only Equity Line Agreement and Disclosure Statement ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through Trustmark National Bank. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Trustmark National Bank. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay Trustmark National Bank, or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means, to the extent permitted by law, we can seek repayment from any Borrower of all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible. Notwithstanding anything herein to the contrary, pursuant to Section 50(a)(6)(C), Article XVI, Texas Constitution, the extension of credit represented by this Agreement is without recourse for personal liability unless you or your spouse, if married, obtain the extension of credit by actual fraud.**

**Home Equity Line of Credit. This Credit Line Account is an extension of credit of the type defined by Sections 50(a)(6) and 50(t), Article XVI, Texas Constitution.** Pursuant to Section 50(a)(6)(O) of such article, we may contract for and receive any fixed or variable rate of interest authorized under statute. This Credit Line Account is made at an agreed rate authorized by applicable law. Notwithstanding any provision in this Agreement or in any other document, pursuant to Section 50(a)(6)(H), Article XVI, Texas Constitution, this Credit Line Account is not secured by any collateral in addition to your homestead. Lender is a financial institution that qualifies to make loans subject to Section 50(a)(6), Article XVI, Texas Constitution as described in Section 50(a)(6)(P), Article XVI, Texas Constitution.

**Fees Limited.** Notwithstanding any provision to the contrary in this Agreement or any document related to this Agreement, you or your spouse, if applicable, do not agree or intend to pay, and we do not agree or intend to charge or collect, any fee or charge that would in any way cause us to charge or collect more than the maximum we would be permitted to charge under Section 50(a)(6), Article XVI, Texas Constitution. This includes the prohibition on fees other than interest or bona fide discount points used to buy down the interest rate that exceed two percent of the original principal balance (except fees for an appraisal performed by a third party appraiser, a property survey performed by a state registered or licensed surveyor, a state base premium for a mortgagee policy of title insurance with endorsements established in accordance with state law, or a title examination report that has a cost less than the state base premium for a mortgagee policy of title insurance without such endorsements, which are not encompassed by such prohibition) as more fully described in Section 50(a)(6)(E), Article XVI, Texas Constitution.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until October 24, 2043 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on October 28, 2023 (the "Effective Disbursement Date") and will continue as follows: ten (10) years from the date of the Agreement. You may obtain credit advances during this period ("Draw Period"). After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain credit advances. The length of the repayment period is as follows: ten (10) years beginning at the completion of the Draw Period. To the extent permitted by applicable law, you agree that we may renew or extend the period during which you may obtain credit advances or make payments, and you further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued **FINANCE CHARGES** ("First Payment Stream"). Your payments will be due monthly. This means that you have a monthly billing cycle. Your First Payment Stream will last for the first 120 billing cycles. Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. An increase in the **ANNUAL PERCENTAGE RATE** may increase the amount of your Regular Payment. The Minimum Payment during the First Payment Stream will not reduce the principal that is outstanding on your Credit Line.

After completion of the First Payment Stream, your "Regular Payment" will be based on an amortization of your balance at the start of this payment period as shown below ("Second Payment Stream"). Your payments will be due monthly.

| Range of Balances | Number of Payments | Amortization Period |
|---|---|---|
| All Balances | 120 | 120 payments |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges.

A change in the **ANNUAL PERCENTAGE RATE** can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, so more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance. If this happens, we may adjust your payment as follows: your payment may be increased by the amount necessary to repay the balance by the end of this payment stream. Each time the **ANNUAL PERCENTAGE RATE** changes, we will review the effect the change has on your Credit Line Account to see if your payment is sufficient to pay the balance by the Maturity Date. If it is not, your payment will be increased by an amount necessary to repay the balance by the Maturity Date. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to Finance Charges; then to unpaid principal; and then to late charges and other charges.

**Receipt of Payments.** All payments must be made in U.S. dollars and must be received by us consistent with any payment instructions provided on or with your periodic billing statement. If a payment is made consistent with our payment instructions but received after 5:00 PM Central Time on a business day, we will apply your payment to your Credit Line on the next business day.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Fifty-five Thousand & 00/100 Dollars ($55,000.00), which will be your "Credit Limit" under this Agreement. Your Credit Limit is the maximum principal amount you may have outstanding at any one time. Pursuant to Sections 50(a)(6)(B) and 50(t)(5), Article XVI, Texas Constitution, you acknowledge and agree that the aggregate sum of the Credit Limit and all outstanding principal balances on all other debts secured by your homestead is less than or equal to eighty percent (80%) of your homestead's fair market value at the time of the origination of this Credit Line Account. If the aggregate sum referred to in the preceding sentence equals or exceeds eighty percent (80%) of your homestead's fair market value at the time of the origination of this Credit Line Account, you may not continue to request advances until such sum is less than eighty percent (80%) of your homestead's fair market value at the time of the origination of this Credit Line Account. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. Pursuant to Section 50(t)(1), Article XVI, Texas Constitution, you may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the

*L-9010-A000019026530-F000000000000000-P02*

## TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT



Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** Beginning on the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other. Pursuant to Section 50(t)(3), Article XVI, Texas Constitution, a credit card, debit card, or similar device, or a preprinted check that you have not requested may not be used to obtain an advance.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**In Person Request Limitations.** The following transaction limitations will apply to your Credit Line and requesting an advance in person.

**Minimum Advance Amount. Pursuant to Section 50(t)(2), Article XVI, Texas Constitution, the minimum amount of any credit advance that can be made on your Credit Line is $4,000.00.**

**Other Transaction Requirements.** You cannot use an advance on your Credit Line to repay any amounts due under the terms of the Equity Line Agreement and Disclosure Statement.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Homestead Lien Contract and Deed of Trust dated October 24, 2023, to a trustee in favor of us on real property located in Montgomery County, State of Texas.

**PROPERTY INSURANCE. FIRE AND EXTENDED COVERAGE INSURANCE against loss of or damage to the property to its full insurable value or to the extent of all indebtedness under this Agreement, whichever is less, IS REQUIRED for the full term of this Agreement, and YOU MAY OBTAIN SUCH INSURANCE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS OR IN THE STATE WHERE THE PROPERTY IS LOCATED, IF OTHER THAN TEXAS. YOU MAY ALSO PROVIDE THE SAME BY ASSIGNMENT OF EXISTING EQUIVALENT COVERAGE. If you fail to maintain such insurance for any reason, we may buy similar insurance protecting our interest in the property, and you will repay us the premium for such insurance, together with interest thereon as provided in this Agreement without considering any exercise of our right to increase the Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE set forth in the "Lender's Rights" section of this Agreement. We will inform you of the addition of this amount to the unpaid balance. If such insurance is sold for a premium not fixed or approved by the State Board of Insurance, you will be so notified at the time it is purchased. You may cancel such insurance at any time by providing proper evidence to us that you have obtained insurance as required by this Agreement and any security instruments.**

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement, unless prohibited by applicable law. It will show, among other things, credit advances, **FINANCE CHARGES**, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic **FINANCE CHARGES** for credit advances under your Credit Line will begin to accrue on the date of the credit advance. There is no "free ride period" which would allow you to avoid a **FINANCE CHARGE** on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily **FINANCE CHARGE** will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances, and subtract any unpaid **FINANCE CHARGES** and any payments or credits. This gives us the "daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any periodic **FINANCE CHARGE** is determined by applying the "Periodic Rate" to the balance described herein. Then we add together the periodic **FINANCE CHARGES** for each day in the billing cycle. This is your **FINANCE CHARGE** calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. We start with an independent index which is the "Wall Street Journal" Published Prime Rate (the "Index"). We will use the most recent Index value available to us as of the first day of each billing cycle for any **ANNUAL PERCENTAGE RATE** adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If Lender at any time shall determine that for any reason the Index cannot be adequately ascertained, or that Lender can no longer offer the Index, or the Index no longer accurately reflects borrowing costs in the market, then Lender may designate a substitute index after notifying Borrower. Any change in the Index may, at Lender's discretion, necessitate a change in the spread over the Index to produce a comparable all-in interest rate. In the event that such change is warranted, Lender shall notify Borrower.
To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (366 during leap years). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (366 during leap years). This result is the **ANNUAL PERCENTAGE RATE** for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (366 during leap years). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (366 during leap years). This result is the **ANNUAL PERCENTAGE RATE** for your Second Payment Stream. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect during the Draw Period (First Payment Stream), the first day of each billing cycle for your account following an index change.

During the Repayment Period (Second Payment Stream), we will calculate your ANNUAL PERCENTAGE RATE by adding the Margin to the Index in effect sixty (60) days prior to the tenth (10th) anniversary date of the Agreement. Your ANNUAL PERCENTAGE RATE during the Repayment Period will be adjusted on the tenth (10th) anniversary date of the Agreement and annually thereafter. In no event will the Periodic Rate result in a corresponding **ANNUAL PERCENTAGE RATE** that is less than 7.500% or more than 18.000%, nor will the Periodic Rate or corresponding **ANNUAL PERCENTAGE RATE** exceed the maximum rate allowed by applicable law. Today the Index is 8.500% per annum, and therefore the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line are as stated below:

*L-9010-A000019026530-F000000000000000-P03*

# TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT



Current Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.000% | 9.500% | 0.02603% |

Current Rates for the Second Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.000% | 9.500% | 0.02603% |

**Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period. The interest rate on this Agreement has been implemented under the "Weekly Ceiling" as referred to in Sections 303.002 and 303.003 of the Texas Finance Code. No matter what else may be stated in any other provision of this Agreement or in any other document you may have with us, you do not agree or intend to pay, and we do not agree or intend to charge any interest or fee for the Trustmark Interest Only Equity Line Agreement and Disclosure Statement which would in any way cause us to contract for, charge or collect more for the Credit Line Account than the maximum we would be permitted to charge or collect by any applicable federal or Texas state law. The right to accelerate maturity or sums due under this Agreement does not include the right to accelerate any interest which has not otherwise been accrued on the date of such acceleration, and we do not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to us for the use, forbearance or detention of sums paid under this Agreement shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Agreement until payment in full so that the rate or amount of interest on account of the loan evidenced by this Agreement does not exceed the applicable usury ceiling. When the term "interest" is used in the context of "payment of interest", it is the intent of the parties that all such references shall be to accrued and unpaid interest, and in no event will you ever be required to pay unearned interest.**

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Overlimit Charge.** Your Credit Line Account may be charged $15.00 if you cause your Credit Line Account to go over your Credit Limit.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account $5.00 for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Late Charge.** If we do not receive your Minimum Payment within fifteen (15) days of the "Payment Due Date" shown on your periodic statement, we will apply a Late Payment Charge to your Account of $15.00.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, the obligation to not exceed your Credit Limit, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time. If the Index is no longer available, you agree that we may choose a new Index and margin consistent with the "Periodic Rate and Corresponding **ANNUAL PERCENTAGE RATE**" section of this Agreement. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Remedies.** Pursuant to Section 50(a)(6)(C), Article XVI, Texas Constitution, our remedies in the event the balance and accrued **FINANCE CHARGES** for this Credit Line Account are not paid upon maturity, however that maturity happens, is to look exclusively to the collateral for this Credit Line Account, and no deficiency or monetary judgment, execution, attachment or other writ or process shall be sought, issued, or levied upon you or your spouse, if married, or against you or your spouse or upon any assets, properties or funds other than the collateral described in this Agreement, unless the Credit Line Account evidenced by this Agreement is obtained by actual fraud on your or your spouse's part.

**Cure Notice.** You acknowledge and agree that Section 50(a)(6)(Q)(x), Article XVI, Texas Constitution provides us and any holder of this Agreement with the right to correct a failure to comply with our or holder's obligations under the extension of credit. A notice of non-compliance with applicable law to us or the holder of this Agreement may be in writing and mailed to:

Trustmark National Bank
Attn: Retail Lending Underwriting Manager
201 Country Place Parkway Suite A
Pearl, MS 39208

or to a different address if you are given notice pursuant to this Agreement of that different address.

**Collection Costs.** We may hire an attorney who is not our salaried employee to help collect this Agreement if you do not pay, and you will pay our reasonable attorneys' fees. You also will pay us all other amounts we actually incur as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Agreement and, to the extent permitted by law, the reasonable costs of foreclosing upon or selling the Property.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other

*L-9010-A000019026530-F0000000000000000-P04*



right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty or other charge for such prepayment, pursuant to Section 50(a)(6)(G), Article XVI, Texas Constitution; provided, it is understood we will be entitled to receive all otherwise accrued **FINANCE CHARGES,** and other accrued charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Trustmark National Bank, Attn: Loan Operations, P.O. Box 1182 Jackson, MS 39215-1182.**

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Trustmark National Bank Attn: Credit Operations P. O. Box 1182 Jackson, MS 39215-1182.

**Jury Waiver. We and you hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either us or you against the other.**

**Negative Information Disclosure. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**Financial Statements.** The Borrower and/or Grantor agree to provide financial information as lender may require.

**Telephone Monitoring.** From time to time, we may monitor telephone calls regarding your Account with us to assure the quality of our service. You acknowledge and agree to any such monitoring or recording of telephone calls.

**Credit Reports and Information.** You are advised that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of this Agreement.

**Custom Loans.** You may receive your initial advance under your Credit Line as a Custom Loan. You may also convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan. You may also receive any new advance under your Credit Line as a Custom Loan. All Custom Loans will be repaid in monthly installments over a term agreed to by you and us at the time you request a Custom Loan. All Custom Loans must amortize in equal monthly installment of principal and interest over a term not to exceed the expiration date of the draw period for your Credit Line.

**Custom Loan Draw Period.** You can request an advance under your Credit Line as a Custom Loan or exercise the option to convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan only during the Draw Period described in the "Term" section of this Agreement.

**Custom Loan Rate Determination.** The interest rate applicable to the Custom Loan shall be established by us based on rates prevalent at the time you receive an advance under your Credit Line as a Custom Loan or exercise your option to convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan. Following your request to receive an advance under your Credit Line as a Custom Loan or convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan, we will provide you with all disclosures required by law regarding the accrual and payment of interest on the Custom Loan. After your receipt of these disclosures, you will have the opportunity to withdraw your request to receive an advance under your Credit Line as a Custom Loan or convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan.

**General Provisions for Custom Loans.** A Custom Loan represents all or part of one or more credit advances under this Agreement that must be repaid over a fixed term with scheduled monthly payments. The minimum amount you may request for each Custom Loan is $5,000.00. You may request to receive an advance under your Credit Line as a Custom Loan or convert of all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan by contacting any Trustmark branch. The term of each Custom Loan will be the period you select at the time of that Custom Loan, with a maximum term not to exceed the expiration date of the draw period for your Credit Line. You are limited to a maximum of five (5) Custom Loans outstanding at any time. You agree to follow all procedures we specify and to sign any documents, including, but not limited to a Custom Loan Promissory Note, we require to establish a Custom Loan ("Custom Loan Documents"). If two or more Borrowers have signed this Agreement, any one or more of you may establish a Custom Loan as part of your Credit Line.

**Custom Loan Statements.** We will provide you on your monthly statement a separate itemized accounting for each Custom Loan in addition to information regarding your Revolving Balance. All statements will include the applicable information described in the "Periodic Statements" provision contained in this Agreement. Your statement will reflect as separate items the Revolving Balance on your Line of Credit and each Custom Loan with a total aggregate monthly payment due on your Credit Line (the total payment due for your Revolving Balance and each Custom Loan).

**Custom Loan Payments.** We will calculate a separate monthly payment amount for each Custom Loan, which will be set forth in the Custom Loan Documents. Each Custom Loan will be payable in accordance with the provisions of the Custom Loan Documents. You may prepay all or part of the outstanding balance on a Custom Loan any time without penalty. If your Home Equity Line of Credit Agreement and Disclosure has a minimum payment requirement, that minimum payment applies to the revolving line balances and not the Custom Loan payment. If you meet the requirements for the minimum payment on the revolving line, the custom loan payment will be added to that payment amount.

**Single Extension of Credit.** All Custom Loans represent advances under your Credit Line. Your Credit Line, whether evidensed by your Revolving Balance or one or more Custom Loans, is a single extension of credit under this Agreement. You agree and acknowledge that your Revolving Balance and all Custom Loans under your Credit Line are components of a single agreement by us to extend credit to you under this Agreement.

**Additional Suspension Language.** If we temporarily prohibit extensions of credit and/or reduce your credit limit because any of the conditions listed in the Suspension or Reduction section exist, we will mail or deliver a written notice of such action, including the reason for it, to each person who is affected, within 3 business days after the time such action is taken. If your ability to obtain extensions of credit has been halted or your credit limit reduced, at the banks option, you will have to make a written request to us for reinstatement of your credit privileges or credit limit to its prior level before we will consider such reinstatement. If you make such a request, we will investigate and determine whether the condition which caused the suspension or reduction has changed. You will be notified of our reinstatement action or we will advise you that our prior action remains in effect. If the condition which caused the suspension or reduction has changed but another condition warranting

*L-9010-A000019026530-F000000000000000-P05*

# TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT



continued temporary suspension of credit and/or reduction of credit limit or Account termination is discovered by us, we may react to such new information in a manner consistent with the Agreement.

**NO CROSS-DEFAULT/CROSS-COLLATERALIZATION.** If Borrower has executed any document in connection with any other loans or evidence of indebtedness owed to Lender that contains any clause(s) providing for "cross-default" or "cross-collateralization", those clauses shall not apply to the loan or extension of credit evidenced or governed by the Agreement and any documents executed in connection with the Agreement.

**Repayment Period Notices.** Thirty (30) days prior to the tenth (10th) anniversary date of the Agreement and annually thereafter, you will receive a written notice disclosing the new ANNUAL PERCENTAGE RATE and the new Minimum Payment.

**Governing Law. This Agreement is subject to and will be governed first by Sections 50(a)(6) and (e) - (i), Article XVI, of the Texas Constitution, then federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of Texas. This Agreement has been accepted by us in the State of Texas.**

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the most reliable evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the most reliable evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Texas Home Equity Loan Terms.** The following terms reflect the requirements of Sections 50(a)(6) and 50(t), Article XVI, Texas Constitution (both of which govern this Agreement and to which this Agreement is subject). Some of the following are your acknowledgments, representations, and warranties, but all of the following are part of this Agreement and are binding on you and us: (A) This Agreement is made of your own free will and will be secured by a security instrument signed by all owners of the homestead and their spouses; (B) The principal amount of this Credit Line Account, along with all other debts secured by the homestead, does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made; (C) This Credit Line Account must be secured by a lien that may be foreclosed upon only by a court order; (D) You have not been required to pay, in addition to any interest or any bona fide discount points used to buy down the interest rate, any fees to originate, evaluate, maintain, record, insure, or service this Credit Line Account that exceed, in the aggregate, two percent (2%) of the original principal amount of the extension of credit (except for any fees for an appraisal performed by a third party appraiser, a property survey performed by a state registered or licensed surveyor, a state base premium for a mortgagee policy of title insurance with endorsements established in accordance with state law, or a title examination report that has a cost less than the state base premium for a mortgagee policy of title insurance without such endorsements, which are not encompassed by such prohibition); (E) This Credit Line Account is a home equity line of credit in accord with Sections 50(a)(6)(F) and 50(t), Article XVI, Texas Constitution; (F) This Credit Line Account may not be accelerated because of a decrease in the market value of the homestead or because of a default under any debt not secured by prior valid encumbrance against the homestead; (G) This Credit Line Account is either the only debt secured by the homestead at the time this Agreement is signed or all other debts secured by the homestead are made for a purpose described in Subsections (a)(1) through (a)(5) or Subsection (a)(8) of Section 50, Article XVI, Texas Constitution; (H) This Credit Line Account must be and is scheduled to be repaid in a manner consistent with the requirements of Sections 50(a)(6)(L)(ii) and 50(t)(8), Article XVI, Texas Constitution; (I) This Agreement is signed on or after the 12th day after the later of the date that you submitted a loan application for this Credit Line Account or we provided you with the Notice Concerning Extensions of Credit required by Section 50(g), Article XVI, Texas Constitution; (J) This Agreement is signed on or after one business day after the date that you received a copy of the loan application, if not previously provided, and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing, unless you provided written consent to receive these documents on the date of closing due to a bona fide emergency or another good cause; (K) This Agreement is signed on or after the first anniversary of the closing date of any other Texas home equity loan on the homestead as described by Section 50(a)(6), Article XVI, Texas Constitution, except a refinance to cure a defect in an existing Texas home equity loan, unless you requested an earlier closing on oath due to a state of emergency that has been declared by the President of the United States or the Governor of Texas and applies to the area where the homestead is located; (L) Pursuant to Section 50(t)(4), Article XVI, Texas Constitution, any fees collected to originate, evaluate, maintain, record, insure, or service this Credit Line Account are charged at the time this Credit Line Account is opened and no fee is charged or collected in connection with any debit or advance; (M) Under Section 50(t)(7), Article XVI, Texas Constitution, we may not unilaterally amend this Agreement; and (N) The other requirements of Sections 50(a)(6) and 50(t), Article XVI, Texas Constitution set forth in other sections of this Agreement.

**Texas Home Equity Loan Conditions.** This Agreement is made under the following conditions: (A) You are not required to apply the proceeds of the Credit Line Account to repay another debt except debt secured by the homestead or debt to another lender; (B) You are not required to assign wages as security for this Credit Line Account; (C) You are not required to sign any instrument in which blanks are left to be filled in; (D) You and any homestead owner will not be required to sign a confession of judgment or power of attorney to us or to a third person to confess judgment or to appear for the owner in a judicial proceeding; (E) We, at the time the extension of credit is made, will provide you and any homestead owner with a copy of the final loan application and all documents executed by you and any homestead owner at closing related to this Agreement; (F) This Credit Line Account is secured by a deed of trust or security instrument that discloses that the extension of credit is the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution; (G) Within a reasonable time after termination and full payment of this Credit Line Account, we will cancel and return this Agreement and deliver, in recordable form, a release of the lien securing this Credit Line Account or a copy of an endorsement or assignment of the lien to a lender that is refinancing this Credit Line Account; (H) Any homestead owner, and any homestead owner's spouse, if married, may, within three days after the extension of credit is made, rescind the extension of credit without penalty or charge; (I) The homestead owner and we sign a written acknowledgment as to the fair market value of the homestead on the date this Agreement is made; (J) Except as provided otherwise in this paragraph, but only to the extent required by Section 50(a)(6), Article XVI, Texas Constitution, we shall forfeit all principal and interest of the extension of credit if we fail to comply with our obligations under the extension of credit and fail to correct the failure to comply not later than the 60th day after the date you or any homestead owner notifies us of our failure to comply by: (i) paying to you an amount equal to any overcharge paid by you under or related to this Credit Line Account if you have paid an amount that exceeds an amount stated in Section 50(a)(6)(E),(G), or (O), Article XVI, Texas Constitution; (ii) sending the homestead owner a written acknowledgment that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Section 50(a)(6)(B), Article XVI, Texas Constitution, if applicable, or is not secured by property described in Section 50(a)(6)(H) of Article XVI, Texas Constitution; (iii) sending you a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting your account to ensure that you are not required to pay more than an amount permitted by Section 50(a)(6), Article XVI, Texas Constitution and are not subject to any other term or provision prohibited by Section 50, Article XVI, Texas Constitution; (iv) delivering the required documents to you if we fail to comply with Section 50(a)(6)(Q)(v), Article XVI, Texas Constitution, or obtaining the appropriate signatures if we fail to comply with Section 50(a)(6)(Q)(ix), Article XVI, Texas Constitution; (v) sending you a written acknowledgement, if the failure to comply is prohibited by Section 50(a)(6)(K), Article XVI, Texas Constitution, that the accrual of interest and all of your obligations under the extension of credit are abated while any prior lien prohibited under Section 50(a)(6)(K) remains secured by the homestead; or (vi) if the failure to comply cannot be cured by any of the means set forth above within this paragraph, curing the failure to comply by a refund or credit to you of $1,000.00 and offering you the right to refinance the Credit Line Account with us for the remaining term of the Credit Line Account at no cost to you on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with Section 50(a)(6), Article XVI, Texas Constitution or on terms on which we and you otherwise agree that comply with Section 50(a)(6), Article XVI, Texas Constitution; and (K) We shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Section 50(a)(6)(P), Article XVI, Texas Constitution or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, if married, unless each owner and each owner's spouse who did not initially consent subsequently consents.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

*L-9010-A000019026530-F0000000000000000-P06*

# TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT



BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT AND THAT ALL BLANKS WERE FILLED IN PRIOR TO SIGNING. BORROWER ALSO ACKNOWLEDGES RECEIPT OF THE DISCLOSURES REQUIRED BY SECTION 50(g), ARTICLE XVI, TEXAS CONSTITUTION AT LEAST 12 DAYS PRIOR TO THE DATE OF THIS AGREEMENT.

PURSUANT TO SECTION 50(a)(6)(N), ARTICLE XVI, TEXAS CONSTITUTION, THIS AGREEMENT MUST BE AND HAS BEEN SIGNED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW, OR A TITLE COMPANY.

BORROWER:

X ______________________________
Aleksandar Musulin

ACCEPTED: TRUSTMARK NATIONAL BANK

By: ______________________________
Authorized Signer

By signing below, the undersigned Recipient acknowledges receiving this Agreement on October 24, 2023, which contains material disclosures relating to this Credit Line Account. Recipient is not signing for any purpose other than acknowledgment of receipt of the Agreement.

RECIPIENT:

X ______________________________
Elena Yaneva

*L-9010-A00001902653O-F0000000000000000-P07*

# TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT



## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

**Trustmark National Bank**
**Attn: Loan Operations**
**P.O. Box 1182**
**Jackson, MS 39215-1182**

or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

LaserPro, Ver. [illegible] Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX [illegible]

*L-9410-A000019026530-F0000000000000000-P01*

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin, 2319 Perkins Crossing Drive, Conroe, TX 77304

**Lender:** Trustmark National Bank, Texas Northwest Freeway Branch, 14604 N. W. Freeway, Houston, TX 77040

**LOAN TYPE.** This is a non-precomputed Variable Rate Disclosable Open-end Line of Credit Loan to an Individual with a Credit Limit of $55,000.00.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☒ Personal, Family or Household Purposes.

☐ Personal Investment.

☐ Business, Agricultural and All Other.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Home Equity Line of Credit.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and I am not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, I agree to perform and comply with the Real Estate Documents just as if I have signed as a direct and original party to the Real Estate Documents. This means I agree to all the representations and warranties made in the Real Estate Documents. In addition, I agree to perform and comply strictly with all the terms, obligations and covenants to be performed by either me or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell me about any action or inaction Lender takes in connection with the Real Estate Documents. I assume the responsibility for being and keeping informed about the property. I also waive any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property. I agree to remain liable under the Credit Agreement with Lender no matter what action Lender takes or fails to take under the Real Estate Documents.

**FLOOD INSURANCE.** As reflected on Flood Map No. 48339C 0225G dated 08-18-2014, for the community of City of Conroe, the property that will secure the loan is not located in an area that has been identified by the Administrator of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

**DISBURSEMENT INSTRUCTIONS.** I understand that no loan proceeds will be disbursed until any notice of the right to cancel time period specified has expired and all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $55,000.00 as follows:

| | |
|---|---|
| Undisbursed Funds: | $55,000.00 |
| Credit Limit: | $55,000.00 |

**TAX CONSEQUENCES.** I understand that Lender makes no representation or warranty whatsoever concerning the tax consequences of this loan, including the deductibility of interest, and that I should consult with my own tax advisor for guidance on this subject. I also agree that Lender shall not be liable in any manner whatsoever should the interest paid on the loan not be deductible.

**CREDIT INSURANCE.** Credit life insurance, credit disability insurance and involuntary unemployment insurance is not available from lender.

**VOLUNTARY APPLICATION TO DEBT.** N/A If initialed, I hereby acknowledge that I have directed and authorized Lender to apply all or a portion of the proceeds of the loan to pay or satisfy indebtedness owed by me to Lender, and that this direction and authorization was voluntarily given by me to Lender, and was neither proposed nor required by Lender.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, I REPRESENT AND WARRANT TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN MY FINANCIAL CONDITION AS DISCLOSED IN MY MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED OCTOBER 24, 2023.

**BORROWER:**

X [signature]
Aleksandar Musulin

## CREDIT INSURANCE DISCLOSURE

**VOLUNTARY CREDIT INSURANCE. CREDIT LIFE INSURANCE, CREDIT DISABILITY INSURANCE AND INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.**

By signing below, I acknowledge that I am not obtaining credit insurance for this loan for one of the following reasons:

(A) I am not eligible for credit insurance;
(B) Credit insurance is not available from Lender; or
(C) If I am eligible and credit insurance is available from Lender, I do not want it.

Prior to signing this Credit Insurance Notice on October 24, 2023, I read and understood all of the provisions of this Disclosure.

**BORROWER:**

X [signature]
Aleksandar Musulin

LaserPro, Ver. 23.4.0.034 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX

*L-9025-A000019026530-F0000000000000000-P01*

# OWNER ACKNOWLEDGMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**Owner:** Elena Yaneva
2319 Perkins Crossing Drive
Conroe, TX 77304

Section 50(a)(6) of Article XVI of the Texas Constitution imposes certain obligations on lenders who provide loans to owners based on the owners' equity in their homestead and secured by a lien on that homestead. This acknowledgment asks you to confirm that the Lender has met its obligations. Please read this document carefully. If you do not understand it, or have any questions about it, please let your Lender representative know. **DO NOT SIGN anything that is untrue or that you do not understand and agree to.**

**PROPERTY DESCRIPTION.** The word "Property" as used in this Acknowledgment means the following Real Property located in Montgomery County, State of Texas:

LOT THIRTY (30), IN BLOCK ONE (1) OF THE FINAL PLAT OF TEAS LAKES, SECTION THREE (3), A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET W, SHEET 188 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

The Real Property or its address is commonly known as 2319 Perkins Crossing Drive, Conroe, TX 77304. The words "Real Property" also include all existing and future buildings, structures, facilities, additions and similar construction on the real property.

**DEFINITIONS.** The following words shall have the following meanings when used in this Acknowledgment:

**Acknowledgment.** The word "Acknowledgment" means this Owner Acknowledgment.

**Borrower.** The word "Borrower" means Aleksandar Musulin.

**Lender.** The word "Lender" means Trustmark National Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Loan.** The word "Loan" means the loan to Borrower by Lender secured by the Property with a Credit Limit of $55,000.00 and documented by a Credit Agreement dated October 24, 2023.

**Owner.** The word "Owner" means Elena Yaneva and any and all persons and entities executing the Homestead Lien Contract and Deed of Trust.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Acknowledgment.

**A. ACKNOWLEDGMENTS:**

**The statements below reflect the requirements of Section 50(a)(6), Article XVI, Texas Constitution that pertain to a home equity loan. If they are not correct, please consult with your Lender representative.**

**I acknowledge the following:**

A.1. I understand that the Loan must be without recourse for personal liability against me or my spouse, if I am married, unless the Loan was obtained by actual fraud.

A.2. I understand that the Homestead Lien Contract and Deed of Trust may be foreclosed only by court order.

A.3. I understand that the Loan must be payable in advance without penalty or charge for making such advance payment.

A.4. I understand that the Loan may not be accelerated (which means that all amounts owed become due in advance of the scheduled maturity date) because of a decrease in the market value of the Property or my default under other indebtedness not secured by a prior valid encumbrance against the Property.

A.5. I understand that the Loan must be scheduled to be repaid in a manner consistent with the requirements of Section 50(a)(6)(L), Article XVI, Texas Constitution.

A.6. I understand that the Loan must contract for a fixed or variable rate of interest authorized under applicable law.

*L-9025-A000019026530-F0000000000000000-P02*

## OWNER ACKNOWLEDGMENT (Continued)



A.7. I understand that Lender must be a financial institution that qualifies to make loans subject to Section 50(a)(6), Article XVI, Texas Constitution as described in Section 50(a)(6)(P), Article XVI, Texas Constitution.

A.8. I understand that Lender, at the time this Loan is made, is required to provide me with a copy of the final loan application and all documents executed by me at closing related to this Loan.

A.9. Within a reasonable time after termination and full payment of this Loan, Lender will cancel and return any note and deliver, in recordable form, a release of the lien securing this Loan or a copy of an endorsement or assignment of the lien to a lender that is refinancing this Loan.

A.10. I understand and I have been informed that I or my spouse, if I am married, may, within three days after this Loan is made, rescind (which means cancel) this Loan without penalty or charge.

A.11. Except as provided otherwise in this paragraph, but only to the extent required by Section 50(a)(6), Article XVI, Texas Constitution, Lender shall forfeit all principal and interest due under this Loan if Lender fails to comply with Lender's obligations under the Loan and fails to correct the failure to comply not later than the 60th day after the date I notify Lender of Lender's failure to comply by:

(i) paying to Borrower an amount equal to any overcharge paid by Borrower under or related to this Loan if Borrower has paid an amount that exceeds an amount stated in Section 50(a)(6)(E),(G), or (O), Article XVI, Texas Constitution;
(ii) sending me a written acknowledgment that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Section 50(a)(6)(B), Article XVI, Texas Constitution, if applicable, or is not secured by property described in Section 50(a)(6)(H), Article XVI, Texas Constitution, if applicable;
(iii) sending Borrower a written notice modifying any other amount, percentage, term, or other provision prohibited by Section 50, Article XVI, Texas Constitution to a permitted amount, percentage, term, or other provision and adjusting Borrower's account to ensure that Borrower is not required to pay more than an amount permitted by Section 50, Article XVI, Texas Constitution and is not subject to any other term or provision prohibited by Section 50, Article XVI, Texas Constitution;
(iv) delivering the required documents to me if Lender fails to comply with Section 50(a)(6)(Q)(v), Article XVI, Texas Constitution or obtaining the appropriate signatures if Lender fails to comply with Section 50(a)(6)(Q)(ix), Article XVI, Texas Constitution;
(v) sending Borrower a written acknowledgement, if the failure to comply is prohibited by Section 50(a)(6)(K), Article XVI, Texas Constitution, that the accrual of interest and all of Borrower's obligations under the extension of credit are abated while any prior lien prohibited under Section 50(a)(6)(K), Article XVI, Texas Constitution remains secured by the homestead; or
(vi) if the failure to comply cannot be cured by any of the means set forth above within this paragraph, curing the failure to comply by a refund or credit to Borrower of $1,000.00 and offering Borrower the right to refinance this Loan with Lender for the remaining term of this Loan at no cost to Borrower on the same terms, including interest, as the original Loan with any modifications necessary to comply with Section 50, Article XVI, Texas Constitution or on terms on which Lender and Borrower otherwise agree that comply with Section 50, Article XVI, Texas Constitution.

A.12. Lender shall forfeit all principal and interest due under this Loan if this Loan is made by a person other than a person described under Section 50(a)(6)(P), Article XVI, Texas Constitution or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents.

A.13. I understand that the minimum amount of any credit advance permitted under the Loan is $4,000.00.

A.14. I understand that a credit card, debit card, or similar device, or a preprinted check that Borrower did not solicit may not be used by the owner(s) of the homestead to obtain an advance under the Loan.

A.15. I understand that excluding interest or any bona fide discount points used to buy down the interest rate, the fees allowed under Section 50(a)(6)(Q)(ix), Article XVI, Texas Constitution to originate, evaluate, maintain, record, insure, or service the Loan are charged at the time the home equity line of credit representing the Loan is opened and no such fees may be charged or collected in connection with any debit or advance.

A.16. I understand that Lender may not unilaterally amend the terms of the Loan.

A.17. I understand that repayment of the Loan will be made consistent with the requirements of Section 50(t)(8), Article XVI, Texas Constitution, which governs the frequency, amount, and timing of repayment.

**B. MY REPRESENTATIONS AND WARRANTIES:**

**The statements below reflect the requirements of the Section 50(a)(6), Article XVI, Texas Constitution that pertain to a home equity loan. If they are not correct, please consult with your Lender representative.**

**I represent and warrant the following:**

*L-9025-A000019026530-F0000000000000000-P03*

# OWNER ACKNOWLEDGMENT
## (Continued)



B.1. The Homestead Lien Contract and Deed of Trust securing the Loan is a voluntary lien on the Property created with my consent and, if married, the consent of my spouse.

B.2. The original principal amount of the Loan secured by the Property, when added to the aggregate total of the outstanding principal balances of any other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty percent (80%) of the fair market value of the Property. I understand that Borrower will not be able to obtain advances if this aggregate sum of outstanding principal balance, including amounts outstanding under the Loan, ever equals or exceeds eighty percent (80%) of my homestead's fair market value at the time of the origination of this Loan until such sum is paid down to less than eighty percent (80%) of my homestead's fair market value at the time of the origination of this Loan.

B.3. I have not been required to pay, in addition to any interest or any bona fide discount points used to buy down the interest rate, any fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the Loan that exceed, in the aggregate, two percent (2%) of the original principal amount of the Loan (except for any fees for an appraisal performed by a third party appraiser, a property survey performed by a state registered or licensed surveyor, a state base premium for a mortgagee policy of title insurance with endorsements established in accordance with state law, or a title examination report that has a cost less than the state base premium for a mortgagee policy of title insurance without such endorsements, which are not encompassed by such prohibition).

B.4. The Loan is a home equity line of credit constituting an open-end account that may be debited from time to time or under which credit may be extended from time to time and under which Borrower may request advances, repay money and re-borrow money.

B.5. The Loan is not secured by any additional real or personal property other than the Property. All of the Property is my homestead.

B.6. I received and reviewed my NOTICE CONCERNING EXTENSIONS OF CREDIT, which expressly stated that it was provided pursuant to the requirements of Section 50(g), Article XVI, Texas Constitution, or Borrower submitted Borrower's loan application, whichever is later, at least twelve (12) days before the closing of the Loan.

B.7. I affirm that, at the time the Loan is made, the Loan is either the only debt secured by the Property or, if there are other debts secured by the Property, such other debts are made for a purpose described by Sections 50(a)(1) through (5) or 50(a)(8), Article XVI, Texas Constitution.

B.8. I received and reviewed, at least one business day before closing, a copy of the loan application, if not previously provided, and a final, itemized disclosure of the actual fees, points, interest, costs and charges that were charged at closing.

B.9. I affirm that either I have not had another Loan of this type (a home equity loan as described in Section 50(a)(6), Article XVI, of the Texas Constitution) secured by a lien on my home within one (1) year from the date of the closing of my loan or one of the following exceptions to this requirement applies: (a) my home equity loan is a curative refinance extended by Lender to cure a failure to comply with Lender's or another holder's obligations under a previous home equity loan on my homestead or (b) I requested on oath a closing date for my Loan that is less than one year from the closing of the most recent home equity loan on my home due to a state of emergency declared by the President of the United States or the Governor of Texas in the area in which my home is located.

B.10. The Loan is being closed at the office of Lender, an attorney at law, or a title company.

B.11. I have not been required to apply the proceeds of the Loan to repay another debt except debt secured by the homestead or debt to another lender.

B.12. I have not been required to assign wages as security for this Loan.

B.13. I have not been required to sign any instrument in which blanks are left to be filled in.

B.14. I have not been required to sign a confession of judgment or power of attorney to Lender or to a third person to confess judgment or to appear for me in a judicial proceeding.

B.15. The Loan is secured by a deed of trust or security instrument that discloses that the extension of credit is the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution.

B.16. Lender and I have signed a written acknowledgment as to the fair market value of the homestead on the date this Loan is made.

B.17. I understand and agree that Lender is relying on the truth and accuracy of each of the acknowledgments, representations, and warranties in this Acknowledgment. I acknowledge that Lender would not make the Loan if any of the representations and warranties were not true and accurate.

*L-9025-A00001 9026530-F0000000000000000-P04*

Loan No: 000

## OWNER ACKNOWLEDGMENT
(Continued)



EACH UNDERSIGNED OWNER ACKNOWLEDGES HAVING RECEIVED A COPY OF AND READ ALL THE PROVISIONS OF THIS OWNER ACKNOWLEDGMENT. THIS OWNER ACKNOWLEDGMENT IS DATED OCTOBER 24, 2023.

OWNER:

X ______________________
Elena Yaneva

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF Texas )
) SS
COUNTY OF Harris )

BEVERLY A. DEVENPORT NOTARY PUBLIC STATE OF TEXAS ID 12414134-8 EXP. 08-11-2026

SUBSCRIBED AND SWORN TO before me on October 24, 20 23 by Elena Yaneva.

______________________
Notary Public, State of Texas

LaserPro, Ver. 22.4.0.054 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX [illegible] TR-[illegible] PR-[illegible]

*L-9026-A000019026530-F0000000000000000-P05*

# EXHIBIT "A"

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**Owner:** Elena Yaneva
2319 Perkins Crossing Drive
Conroe, TX 77304

---

This EXHIBIT "A" is attached to and by this reference is made a part of the Owner Acknowledgment, dated October 24, 2023, and executed in connection with a loan or other financial accommodations between TRUSTMARK NATIONAL BANK and Aleksandar Musulin.

**Outstanding liens against Real Property as described in the Owner Acknowledgement referenced above:**
**Deed of Trust dated December 11, 2019 to Gardner Financial Services, LTD., DBA Legacy Mutual Mortgage.**

THIS EXHIBIT "A" IS EXECUTED ON OCTOBER 24, 2023.

OWNER:

X ______________________________
Elena Yaneva

LaserPro, Ver. 22.4.0.056 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX [illegible] TR-[illegible] PR-[illegible]

*L-9025-A000019026530-F0000000000000000-P01*

# OWNER ACKNOWLEDGMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Owner:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

Section 50(a)(6) of Article XVI of the Texas Constitution imposes certain obligations on lenders who provide loans to owners based on the owners' equity in their homestead and secured by a lien on that homestead. This acknowledgment asks you to confirm that the Lender has met its obligations. Please read this document carefully. If you do not understand it, or have any questions about it, please let your Lender representative know. **DO NOT SIGN anything that is untrue or that you do not understand and agree to.**

**PROPERTY DESCRIPTION.** The word "Property" as used in this Acknowledgment means the following Real Property located in Montgomery County, State of Texas:

LOT THIRTY (30), IN BLOCK ONE (1) OF THE FINAL PLAT OF TEAS LAKES, SECTION THREE (3), A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET W, SHEET 188 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

The Real Property or its address is commonly known as 2319 Perkins Crossing Drive, Conroe, TX 77304. The words "Real Property" also include all existing and future buildings, structures, facilities, additions and similar construction on the real property.

**DEFINITIONS.** The following words shall have the following meanings when used in this Acknowledgment:

**Acknowledgment.** The word "Acknowledgment" means this Owner Acknowledgment.

**Borrower.** The word "Borrower" means Aleksandar Musulin.

**Lender.** The word "Lender" means Trustmark National Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Loan.** The word "Loan" means the loan to me by Lender secured by the Property with a Credit Limit of $55,000.00 and documented by a Credit Agreement dated October 24, 2023.

**Owner.** The word "Owner" means Aleksandar Musulin. The words "Owner" and "Borrower" are used interchangeably.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Acknowledgment.

**A. ACKNOWLEDGMENTS:**

**The statements below reflect the requirements of Section 50(a)(6), Article XVI, Texas Constitution that pertain to a home equity loan. If they are not correct, please consult with your Lender representative.**

**I acknowledge the following:**

A.1. I understand that the Loan must be without recourse for personal liability against me or my spouse, if I am married, unless the Loan was obtained by actual fraud.

A.2. I understand that the Homestead Lien Contract and Deed of Trust may be foreclosed only by court order.

A.3. I understand that the Loan must be payable in advance without penalty or charge for making such advance payment.

A.4. I understand that the Loan may not be accelerated (which means that all amounts owed become due in advance of the scheduled maturity date) because of a decrease in the market value of the Property or my default under other indebtedness not secured by a prior valid encumbrance against the Property.

A.5. I understand that the Loan must be scheduled to be repaid in a manner consistent with the requirements of Section 50(a)(6)(L), Article XVI, Texas Constitution.

A.6. I understand that the Loan must contract for a fixed or variable rate of interest authorized under applicable law.

A.7. I understand that Lender must be a financial institution that qualifies to make loans subject to Section 50(a)(6), Article XVI, Texas Constitution as described in Section 50(a)(6)(P), Article XVI, Texas Constitution.

A.8. I understand that Lender, at the time this Loan is made, is required to provide me with a copy of the final loan application and all

*L-9025-A000019026530-F0000000000000000-P02*



documents executed by me at closing related to this Loan.

A.9. Within a reasonable time after termination and full payment of this Loan, Lender will cancel and return any note and deliver, in recordable form, a release of the lien securing this Loan or a copy of an endorsement or assignment of the lien to a lender that is refinancing this Loan.

A.10. I understand and I have been informed that I or my spouse, if I am married, may, within three days after this Loan is made, rescind (which means cancel) this Loan without penalty or charge.

A.11. Except as provided otherwise in this paragraph, but only to the extent required by Section 50(a)(6), Article XVI, Texas Constitution, Lender shall forfeit all principal and interest due under this Loan if Lender fails to comply with Lender's obligations under the Loan and fails to correct the failure to comply not later than the 60th day after the date I notify Lender of Lender's failure to comply by:

(i) paying to me an amount equal to any overcharge paid by me under or related to this Loan if I have paid an amount that exceeds an amount stated in Section 50(a)(6)(E),(G), or (O), Article XVI, Texas Constitution;
(ii) sending me a written acknowledgment that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Section 50(a)(6)(B), Article XVI, Texas Constitution, if applicable, or is not secured by property described in Section 50(a)(6)(H), Article XVI, Texas Constitution, if applicable;
(iii) sending me a written notice modifying any other amount, percentage, term, or other provision prohibited by Section 50, Article XVI, Texas Constitution to a permitted amount, percentage, term, or other provision and adjusting my account to ensure that I am not required to pay more than an amount permitted by Section 50, Article XVI, Texas Constitution and am not subject to any other term or provision prohibited by Section 50, Article XVI, Texas Constitution;
(iv) delivering the required documents to me if Lender fails to comply with Section 50(a)(6)(Q)(v), Article XVI, Texas Constitution or obtaining the appropriate signatures if Lender fails to comply with Section 50(a)(6)(Q)(ix), Article XVI, Texas Constitution;
(v) sending me a written acknowledgement, if the failure to comply is prohibited by Section 50(a)(6)(K), Article XVI, Texas Constitution, that the accrual of interest and all of my obligations under the extension of credit are abated while any prior lien prohibited under Section 50(a)(6)(K), Article XVI, Texas Constitution remains secured by the homestead; or
(vi) if the failure to comply cannot be cured by any of the means set forth above within this paragraph, curing the failure to comply by a refund or credit to me of $1,000.00 and offering me the right to refinance this Loan with Lender for the remaining term of this Loan at no cost to me on the same terms, including interest, as the original Loan with any modifications necessary to comply with Section 50, Article XVI, Texas Constitution or on terms on which Lender and I otherwise agree that comply with Section 50, Article XVI, Texas Constitution.

A.12. Lender shall forfeit all principal and interest due under this Loan if this Loan is made by a person other than a person described under Section 50(a)(6)(P), Article XVI, Texas Constitution or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents.

A.13. I understand that the minimum amount of any credit advance permitted under the Loan is $4,000.00.

A.14. I understand that a credit card, debit card, or similar device, or a preprinted check that Borrower did not solicit may not be used by the owner(s) of the homestead to obtain an advance under the Loan.

A.15. I understand that excluding interest or any bona fide discount points used to buy down the interest rate, the fees allowed under Section 50(a)(6)(Q)(ix), Article XVI, Texas Constitution to originate, evaluate, maintain, record, insure, or service the Loan are charged at the time the home equity line of credit representing the Loan is opened and no such fees may be charged or collected in connection with any debit or advance.

A.16. I understand that Lender may not unilaterally amend the terms of the Loan.

A.17. I understand that repayment of the Loan will be made consistent with the requirements of Section 50(t)(8), Article XVI, Texas Constitution, which governs the frequency, amount, and timing of repayment.

**B. MY REPRESENTATIONS AND WARRANTIES:**

**The statements below reflect the requirements of the Section 50(a)(6), Article XVI, Texas Constitution that pertain to a home equity loan. If they are not correct, please consult with your Lender representative.**

I represent and warrant the following:

B.1. The Homestead Lien Contract and Deed of Trust securing the Loan is a voluntary lien on the Property created with my consent and, if married, the consent of my spouse.

B.2. The original principal amount of the Loan secured by the Property, when added to the aggregate total of the outstanding principal balances of any other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty percent (80%)

*L-9025-A000019026530-F0000000000000000-P03*

# OWNER ACKNOWLEDGMENT
## (Continued)



of the fair market value of the Property. I understand that I will not be able to obtain advances if this aggregate sum of outstanding principal balance, including amounts outstanding under the Loan, ever equals or exceeds eighty percent (80%) of my homestead's fair market value at the time of the origination of this Loan until such sum is paid down to less than eighty percent (80%) of my homestead's fair market value at the time of the origination of this Loan.

B.3. I have not been required to pay, in addition to any interest or any bona fide discount points used to buy down the interest rate, any fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the Loan that exceed, in the aggregate, two percent (2%) of the original principal amount of the Loan (except for any fees for an appraisal performed by a third party appraiser, a property survey performed by a state registered or licensed surveyor, a state base premium for a mortgagee policy of title insurance with endorsements established in accordance with state law, or a title examination report that has a cost less than the state base premium for a mortgagee policy of title insurance without such endorsements, which are not encompassed by such prohibition).

B.4. The Loan is a home equity line of credit constituting an open-end account that may be debited from time to time or under which credit may be extended from time to time and under which I may request advances, repay money and re-borrow money.

B.5. The Loan is not secured by any additional real or personal property other than the Property. All of the Property is my homestead.

B.6. I received and reviewed my NOTICE CONCERNING EXTENSIONS OF CREDIT, which expressly stated that it was provided pursuant to the requirements of Section 50(g), Article XVI, Texas Constitution, or I submitted my loan application, whichever is later, at least twelve (12) days before the closing of the Loan.

B.7. I affirm that, at the time the Loan is made, the Loan is either the only debt secured by the Property or, if there are other debts secured by the Property, such other debts are made for a purpose described by Sections 50(a)(1) through (5) or 50(a)(8), Article XVI, Texas Constitution.

B.8. I received and reviewed, at least one business day before closing, a copy of the loan application, if not previously provided, and a final, itemized disclosure of the actual fees, points, interest, costs and charges that were charged at closing.

B.9. I affirm that either I have not had another Loan of this type (a home equity loan as described in Section 50(a)(6), Article XVI, of the Texas Constitution) secured by a lien on my home within one (1) year from the date of the closing of my loan or one of the following exceptions to this requirement applies: (a) my home equity loan is a curative refinance extended by Lender to cure a failure to comply with Lender's or another holder's obligations under a previous home equity loan on my homestead or (b) I requested on oath a closing date for my Loan that is less than one year from the closing of the most recent home equity loan on my home due to a state of emergency declared by the President of the United States or the Governor of Texas in the area in which my home is located.

B.10. The Loan is being closed at the office of Lender, an attorney at law, or a title company.

B.11. I have not been required to apply the proceeds of the Loan to repay another debt except debt secured by the homestead or debt to another lender.

B.12. I have not been required to assign wages as security for this Loan.

B.13. I have not been required to sign any instrument in which blanks are left to be filled in.

B.14. I have not been required to sign a confession of judgment or power of attorney to Lender or to a third person to confess judgment or to appear for me in a judicial proceeding.

B.15. The Loan is secured by a deed of trust or security instrument that discloses that the extension of credit is the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution.

B.16. Lender and I have signed a written acknowledgment as to the fair market value of the homestead on the date this Loan is made.

B.17. I understand and agree that Lender is relying on the truth and accuracy of each of the acknowledgments, representations, and warranties in this Acknowledgment. I acknowledge that Lender would not make the Loan if any of the representations and warranties were not true and accurate.

**EACH UNDERSIGNED OWNER ACKNOWLEDGES HAVING RECEIVED A COPY OF AND READ ALL THE PROVISIONS OF THIS OWNER ACKNOWLEDGMENT. THIS OWNER ACKNOWLEDGMENT IS DATED OCTOBER 24, 2023.**

*L-9025-A000019026530-F0000000000000000-P04*

## OWNER ACKNOWLEDGMENT
(Continued)

Loan No: 000



OWNER:

x [signature]
Aleksandar Musulin

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF Texas )
) SS
COUNTY OF Harris )

BEVERLY A. DEVENPORT
NOTARY PUBLIC
STATE OF TEXAS
ID 12414134-8
EXP 08-11-2026

SUBSCRIBED AND SWORN TO before me on October 24, 20 23 by Aleksandar Musulin.

[signature]
Notary Public, State of Texas

LaserPro, Ver. 22.4.0.056 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX [illegible] TR-275463 PR-800

*L-9025-A000019026530-F0000000000000000-P05*

# EXHIBIT "A"

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Owner:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

This EXHIBIT "A" is attached to and by this reference is made a part of the Owner Acknowledgment, dated October 24, 2023, and executed in connection with a loan or other financial accommodations between TRUSTMARK NATIONAL BANK and Aleksandar Musulin.

**Outstanding liens against Real Property as described in the Owner Acknowledgement referenced above:**
**Deed of Trust dated December 11, 2019 to Gardner Financial Services, LTD., DBA Legacy Mutual Mortgage.**

THIS EXHIBIT "A" IS EXECUTED ON OCTOBER 24, 2023.

OWNER:

X
Aleksandar Musulin

LaserPro, Ver. 22.4.0.034 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX

*L-9105-A000019026530-F0000000000000000-P01*

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**As used in this Notice, the following terms have the following meanings:**

**Loan.** The term "Loan" means the following described loan: a non-precomputed Variable Rate Disclosable Open-end Line of Credit Loan to an Individual with a Credit Limit of $55,000.00.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

**LOAN DOCUMENTS**

- TX Notice of Penalties for False Statements
- TX Homestead Lien Contract and Deed of Trust for Real Property located at 2319 Perkins Crossing Drive, Conroe, TX 77304
- Owner Acknowledgment: Aleksandar Musulin
- TX Voluntary Designation of Homestead: Real Property located at 2319 Perkins Crossing Drive, Conroe, TX 77304
- Disbursement Request and Authorization
- Errors and Omissions Agreement: Elena Yaneva
- Notice of Right to Cancel: Aleksandar Musulin
- Notice Concerning Extensions of Credit: Real Property located at 2319 Perkins Crossing Drive, Conroe, TX 77304
- Trustmark Interest Only Equity Line Agreement and Disclosure Statement
- Acknowledgment of Fair Market Value: Real Property located at 2319 Perkins Crossing Drive, Conroe, TX 77304
- Owner Acknowledgment: Elena Yaneva
- Texas - Acknowledgment of Receipt of Preclosing Disclosure
- Agreement to Provide Insurance
- Notice of Final Agreement
- Errors and Omissions Agreement: Aleksandar Musulin
- Notice of Right to Cancel: Elena Yaneva

**Parties.** The term "Parties" means Trustmark National Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

**Borrower:** Aleksandar Musulin
**Grantor(s):** Aleksandar Musulin and Elena Yaneva

**This Notice of Final Agreement is given by Trustmark National Bank pursuant to Section 26.02 of the Texas Business and Commerce Code. Each Party who signs below, other than Trustmark National Bank, acknowledges, represents, and warrants to Trustmark National Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated October 24, 2023.**

**BORROWER:**

X ______________________
Aleksandar Musulin

**GRANTOR:**

X ______________________
Aleksandar Musulin

X ______________________
Elena Yaneva

*L-9105-A000019026530-F0000000000000000-P02*

# NOTICE OF FINAL AGREEMENT
## (Continued)

Loan No: 000



**LENDER:**

**TRUSTMARK NATIONAL BANK**

X ______________________________

Authorized Signer

LaserPro, Ver. 23.4.0.058 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX [illegible] TR-23659 PR-506

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# HOMESTEAD LIEN CONTRACT AND DEED OF TRUST

**RECORDATION REQUESTED BY:**
Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**WHEN RECORDED MAIL TO:**
Trustmark National Bank
Attn: Loan Operations
P. O. Box 1182
Jackson, MS 39215-1182

**SEND TAX NOTICES TO:**
Aleksandar Musulin
Elena Yaneva
2319 Perkins Crossing Drive
Conroe, TX 77304

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

*L-9040-A000019026530-F000000000000000-P01*

**THE CREDIT SECURED BY THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST IS AN EXTENSION OF CREDIT DEFINED BY AND SUBJECT TO SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.**

**THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST dated October 24, 2023, is made and executed between Aleksandar Musulin and Elena Yaneva (referred to below as "Owner") and Trustmark National Bank, whose address is 14604 N. W. Freeway, Houston, TX 77040 (referred to below as "Lender").**

**GRANT OF LIEN.** For valuable consideration, Owner grants a lien under Section 50(a)(6), Article XVI, Texas Constitution in and to the following described real property, together with all improvements, all proceeds (including without limitation premium refunds) of each policy of insurance relating to any of the improvements, or the Real Property; and all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to **(the "Real Property") located in Montgomery County, State of Texas:**

> **LOT THIRTY (30), IN BLOCK ONE (1) OF THE FINAL PLAT OF TEAS LAKES, SECTION THREE (3), A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET W, SHEET 188 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.**

**The Real Property or its address is commonly known as 2319 Perkins Crossing Drive, Conroe, TX 77304.**

Owner conveys the Real Property to Trustee in trust for the benefit of Lender as hereinafter set forth.

**REVOLVING LINE OF CREDIT.** This Homestead Lien Contract secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Owner and Lender that this Homestead Lien Contract secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.

**THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF OWNER'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST. THIS HOMESTEAD LIEN CONTRACT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**HOMESTEAD PROPERTY.** Owner represents to Lender that the Property is Owner's homestead. If a part of the Property is not now, or at any time in the future is determined not to be, Owner's homestead, Lender hereby disclaims any lien on such non-homestead property, it being Lender's intention to obtain a lien hereunder, as provided for by Section 50(a)(6), Article XVI, Texas Constitution, in Owner's homestead property only. If the Property, as a whole, is determined not to be Owner's homestead, this lien shall be governed by other applicable Texas law. Lender is a financial institution that qualifies to make loans pursuant to Section 50(a)(6), Article XVI, Texas Constitution as described in Section 50(e)(6)(P), Article XVI, Texas Constitution.

**OWNER'S REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.** Owner represents and promises to Lender that: (a) this Homestead Lien Contract is executed at Borrower's request and not at the request of Lender; (b) Owner has the full power, right, and authority to enter into this Homestead Lien Contract and to hypothecate the Property; (c) the provisions of this Homestead Lien Contract do not conflict with, or result in a default under any agreement or other instrument binding upon Owner and do not result in a violation of any law, regulation, court decree or order applicable to Owner; (d) Owner has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Owner about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Homestead Lien Contract, Borrower shall pay to Lender all Indebtedness secured by this Homestead Lien Contract as it becomes due, and Borrower and Owner shall strictly perform all Borrower's and Owner's obligations under this Homestead Lien Contract.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Owner agree that Borrower's and Owner's possession and use of the Property shall be governed by the following provisions:

**Duty to Maintain.** Owner shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Nuisance, Waste.** Owner shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Owner will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent. This restriction will not apply to rights and easements (such as gas and oil) not owned by Owner and of which Owner has informed Lender in writing prior to Owner's signing of this Homestead Lien Contract.

**Removal of Improvements.** Owner shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Owner to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

*L-9040-A000019026530-F0000000000000000-P02*

# HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
(Continued)



**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Owner's compliance with the terms and conditions of this Homestead Lien Contract.

**Compliance with Governmental Requirements.** Owner shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Owner has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Owner to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Owner agrees neither to abandon or leave unattended the Property. Owner shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Homestead Lien Contract upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Texas law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Homestead Lien Contract:

**Payment.** Owner shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Owner shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Homestead Lien Contract, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Homestead Lien Contract.

**Right to Contest.** Owner may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Owner shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Owner has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and Lender's reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Owner shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Owner shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Owner shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Owner shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Owner will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Owner can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Homestead Lien Contract:

**Maintenance of Insurance.** Owner at Lender's request shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Owner shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Owner or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Owner agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of Borrower's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Owner shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Owner fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Owner shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Owner from the proceeds for the reasonable cost of repair or restoration if Owner is not in default under this Homestead Lien Contract. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Homestead Lien Contract, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Owner as Owner's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Homestead Lien Contract, to the extent compliance with the terms of this Homestead Lien Contract would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Homestead Lien Contract for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Owner fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. To the extent permitted by law, all such expenses shall bear interest at the rate charged under the Credit Agreement. The Homestead Lien Contract also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Homestead Lien Contract:

**Title.** Owner warrants that: (a) Owner holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Homestead Lien Contract, and (b) Owner has the full right, power, and authority to execute and deliver this Homestead Lien Contract to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Owner warrants and will forever defend the title to the Property against

*L-9040-A000019026530-F0000000000000000-P03*

# HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
(Continued)



the lawful claims of all persons. In the event any action or proceeding is commenced that questions Owner's title or the interest of Lender under this Homestead Lien Contract, Owner shall defend the action at Owner's expense. Owner may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Owner will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Owner warrants that the Property and Owner's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Homestead Lien Contract:

**Existing Lien.** The lien of this Homestead Lien Contract securing the Indebtedness shall be subordinate to an existing lien. Owner expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Owner shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Homestead Lien Contract by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Owner shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION, JUDGMENTS AND AWARDS.** The following provisions relating to condemnation proceedings, judgments, decrees and awards for injury to the Property are a part of this Homestead Lien Contract:

**Application of Net Proceeds.** To the extent permitted by applicable law, all judgments, decrees and awards for injury or damage to the Property, or any part of the Property, and awards pursuant to proceedings for condemnation of the Property, are hereby absolutely assigned to Lender, and if all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award, judgment or decree shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Owner shall promptly notify Lender in writing, and Owner shall promptly take such steps as may be necessary to defend the action and obtain the award. Owner may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Owner will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Homestead Lien Contract:

**Current Taxes, Fees and Charges.** Upon request by Lender, Owner shall execute such documents in addition to this Homestead Lien Contract and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. To the extent permitted by applicable law, Owner shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Homestead Lien Contract, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Homestead Lien Contract.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Homestead Lien Contract or upon all or any part of the Indebtedness secured by this Homestead Lien Contract; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Homestead Lien Contract; (3) a tax on this type of Homestead Lien Contract chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Homestead Lien Contract, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Owner either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Homestead Lien Contract:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Owner will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Owner's obligations under the Credit Agreement, this Homestead Lien Contract, and the Related Documents, and (2) the liens and security interests created by this Homestead Lien Contract on the Property, whether now owned or hereafter acquired by Owner. Unless prohibited by law or Lender agrees to the contrary in writing, Owner shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** To the extent permitted by applicable law, if Owner fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Owner and at Owner's expense. For such purposes, Owner hereby irrevocably appoints Lender as Owner's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** Pursuant to Section 50(a)(6)(Q)(vii), Article XVI, Texas Constitution, within a reasonable time after termination and full payment of the Indebtedness, Lender shall cancel and return the Credit Agreement to Borrower and give Owner, in recordable form, a release of the lien securing the Indebtedness or a copy of an endorsement of and assignment of the lien to a lender that is refinancing the Indebtedness. Owner shall pay only recordation costs. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

**EVENTS OF DEFAULT.** Owner will be in default under this Homestead Lien Contract if any of the following happen: (A) Owner commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Borrower's or Owner's income, assets, liabilities, or any other aspects of Borrower's or Owner's financial condition. (B) Borrower does not meet the repayment terms of the Credit Agreement. (C) Owner's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** After giving any required notice of default and after Borrower's failure to cure the default during any required cure period, Lender may declare due the entire Indebtedness. However, pursuant to Section 50(a)(6)(J), Article XVI, Texas Constitution, the Indebtedness will not be accelerated simply due to a decline in the market value of the Property nor for a default under any debt not secured by the Property.

**Foreclosure By Court Order Only.** Pursuant to Section 50(a)(6)(D), Article XVI, Texas Constitution, the lien granted by this Homestead Lien Contract may be foreclosed only by court order. If Lender forecloses upon the lien granted in this Homestead Lien Contract, Lender will comply with the applicable rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings as those rules may change from time to time, or Lender may exercise such other remedy as may be available to Lender for loans made pursuant to the authority of Section 50(a)(6), Article XVI of the Texas Constitution. When Lender has complied with the appropriate procedures to

*L-9040-A000019026530-F000000000000000-P04*



obtain permission to foreclose pursuant to Section 51.002 of the Texas Property Code, as it may be amended from time to time, Lender may request the Trustee to foreclose by power of sale and the Trustee shall do so consistently with the rules of civil procedure and Section 51.002 of the Texas Property Code. The Trustee shall have all the powers granted to a trustee under the terms of Section 51.002 of the Texas Property Code and all amendments thereto and all other rights and remedies that are now available to or may hereafter be granted to Trustee to the extent such rights and remedies are consistent with loans made pursuant to the authority of Section 50(a)(6), Article XVI of the Texas Constitution. Lender may appoint in writing a substitute or successor Trustee, succeeding to all rights and responsibilities of Trustee. If an Event of Default occurs, and after court order, Trustee is requested by Lender to foreclose this lien, the Trustee shall (1) either personally or by agent, give notice of the foreclosure sale as required by the Texas Property Code as then amended, (2) sell and convey all or part of the Property to the highest bidder for cash with a general warranty deed binding Owner, subject to prior liens and to other exception to conveyance and warranty, and (3) from the proceeds of the sale, pay in order: (a) expenses of foreclosure; (b) to Lender the full amount of principal, interest and other permitted charges; (c) any amounts required by law to be paid before payments to Owner; and (d) to Owner any balance; provided also that Lender may purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited against the indebtedness evidenced hereby.

**No Deficiency Judgment.** Pursuant to Section 50(a)(6)(C), Article XVI, Texas Constitution, Lender shall not obtain a judgment from Owner or Owner's spouse for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Rights and Remedies on Default section unless the Indebtedness was obtained by Owner or Owner's spouse by actual fraud.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Homestead Lien Contract or the Credit Agreement or available at law or in equity.

**Cure Notice.** Owner acknowledges and agrees that Section 50(a)(6)(Q)(x), Article XVI, Texas Constitution provides Lender and any holder of this Homestead Lien Contract with the right to correct a failure to comply with Lender's or holder's obligations under the extension of credit. A notice of non-compliance with applicable law to Lender or the holder of this Homestead Lien Contract may be in writing and mailed to:

Trustmark National Bank
Attn: Retail Lending Underwriting Manager
201 Country Place Parkway Suite A
Pearl, MS 39208

or to a different address if Owner is given notice pursuant to this Homestead Lien Contract of that different address.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Owner's obligations under this Homestead Lien Contract, after Owner's failure to do so, that decision by Lender will not affect Lender's right to declare Owner in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Homestead Lien Contract, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Owner also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Homestead Lien Contract, Lender shall be entitled to recover from Owner Lender's reasonable attorneys' fees to the extent permitted by law, and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

**NOTICES.** Any other notice required to be given under this Homestead Lien Contract shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Homestead Lien Contract. Any person may change his or her address for notices under this Homestead Lien Contract by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Owner agrees to keep Lender informed at all times of Owner's current address. Unless otherwise provided or required by law, if there is more than one Owner, any notice given by Lender to any Owner is deemed to be notice given to all Owners. It will be Owner's responsibility to tell the others of the notice from Lender.

**TEXAS HOME EQUITY LOAN TERMS.** The following terms reflect the requirements of Sections 50(a)(6) and 50(t), Article XVI, Texas Constitution (both of which govern this Homestead Lien Contract and to which this Homestead Lien Contract is subject). Some of the following are Owner's acknowledgments, representations, and warranties, but all of the following are part of this Homestead Lien Contract and are binding on Owner and Lender. (A) This Homestead Lien Contract is made of Owner's own free will, and each Owner and spouse of each Owner of the Property are signing this Homestead Lien Contract; (B) The maximum principal amount of the Indebtedness, along with all other debts secured by the Property, does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made; further, if the aggregate sum of outstanding principal balance, including amounts outstanding under the Indebtedness, ever equals or exceeds eighty percent (80%) of Owner's homestead's fair market value at the time of the origination of this Indebtedness, Borrower will not be able to obtain any advances until such sum is paid down to less than eighty percent (80%) of Owner's homestead's fair market value at the time of the origination of this Indebtedness; (C) The terms of the Indebtedness do not require Owner to pay, in addition to any interest or any bona fide discount points used to buy down the interest rate, any fees to originate, evaluate, maintain, record, insure, or service the Indebtedness that exceed, in the aggregate, two percent (2%) of the original principal amount of the extension of credit (except for any fees for an appraisal performed by a third party appraiser, a property survey performed by a state registered or licensed surveyor, a state base premium for a mortgagee policy of title insurance with endorsements established in accordance with state law, or a title examination report that has a cost less than the state base premium for a mortgagee policy of title insurance without such endorsements, which are not encompassed by such prohibition); (D) The Indebtedness is a home equity line of credit in accord with Sections 50(a)(6)(F) and 50(t), Article XVI, Texas Constitution; (E) The Indebtedness may be paid in advance without penalty or other charge because of such advance payment; (F) The Indebtedness is not secured by any additional real or personal property other than the homestead; (G) The Indebtedness is either the only debt secured by the Property at the time the Indebtedness is made or all other debts secured by the Property are made for a purpose described in Subsections (a)(1) through (a)(5) or Subsection (a)(8) of Section 50, Article XVI, Texas Constitution; (H) The Indebtedness must be scheduled to be repaid in a manner consistent with the requirements of Sections 50(a)(6)(L)(ii) and 50(t)(8), Article XVI, Texas Constitution; (I) The Indebtedness is closed on or after the 12th day after the later of the date that Borrower submitted a loan application for the Indebtedness or Lender provided Owner with the Notice Concerning Extensions of Credit; (J) The Indebtedness is closed on or after one business day after the date that Owner received a copy of the loan application, if not previously provided, and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing, unless Owner provided written consent to receive these documents on the date of closing due to a bona fide emergency or another good cause; (K) The Indebtedness is closed on or after the first anniversary of the closing date of any other Texas home equity loan on the Property as described by Section 50(a)(6), Article XVI, Texas Constitution, except a refinance to cure a defect in an existing Texas home equity loan, unless Owner requested an earlier closing on oath due to a state of emergency that has been declared by the President of the United States or the Governor of Texas and applies to the area where the Property is located; (L) The Indebtedness was closed only at the office of Lender, the office of an attorney at law, or at a title company; (M) Lender must contract for a fixed or variable rate of interest authorized under applicable law; (N) The Indebtedness is a home equity line of credit under which the Borrower requests advances, repays money, and reborrows money; (O) The minimum amount of any credit advance permitted under the Indebtedness is $4,000.00; (P) A credit card, debit card, or similar device, or a preprinted check that Borrower has not requested may not be used to obtain an advance under the Indebtedness; (Q) Pursuant to Section 50(t)(4), Article XVI, Texas Constitution, any fees collected to originate, evaluate, maintain, record, insure, or service this Indebtedness are charged at the time the home equity line of credit representing the Indebtedness is opened and no fee is

*L-9040-A000019026530-F000000000000000-P05*



charged or collected in connection with any debit or advance; (R) Under Section 50(t)(7), Article XVI, Texas Constitution, we may not unilaterally amend the terms of the Indebtedness; (S) Repayment will be made consistent with the requirements of Section 50(t)(8), Article XVI, Texas Constitution, which governs the frequency, amount, and timing of repayment; and (T) The other requirements of Sections 50(a)(6) and 50(t), Article XVI, Texas Constitution set forth in other sections of this Homestead Lien Contract.

**TEXAS HOME EQUITY LOAN CONDITIONS.** The Indebtedness is made under the following conditions: (A) Owner is not required to apply the proceeds of the Indebtedness to repay another debt except debt secured by the Property or debt to another lender; (B) Owner is not required to assign wages as security for the Indebtedness; (C) Owner is not required to sign any instrument in which blanks are left to be filled in; (D) Owner will not be required to sign a confession of judgment or power of attorney to Lender or to a third person to confess judgment or to appear for the owner in a judicial proceeding; (E) Lender, at the time the extension of credit is made, will provide Owner with a copy of the final loan application and all documents executed by Owner at closing related to the Indebtedness; (F) The Indebtedness is secured by a deed of trust or security instrument that discloses that the extension of credit is the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution; (G) Within a reasonable time after termination and full payment of the Indebtedness, Lender will cancel and return the promissory note and deliver, in recordable form, a release of the lien securing the Indebtedness or a copy of an endorsement or assignment of the lien to a lender that is refinancing the Indebtedness; (H) Owner, and Owner's spouse, if married, may, within three days after the extension of credit is made, rescind the extension of credit without penalty or charge; (I) Owner and Lender sign a written acknowledgment as to the fair market value of the homestead on the date the extension of credit is made; (J) Except as provided otherwise in this paragraph, but only to the extent required by Section 50(a)(6), Article XVI, Texas Constitution, Lender shall forfeit all principal and interest of the extension of credit if Lender fails to comply with Lender's obligations under the extension of credit, and fails to correct the failure to comply not later than the 60th day after the date Owner notifies Lender of Lender's failure to comply by: (i) paying to Borrower an amount equal to any overcharge paid by Borrower under or related to the Indebtedness if Borrower has paid an amount that exceeds an amount stated in Section 50(a)(6)(E),(G), or (O), Article XVI, Texas Constitution; (ii) sending Owner a written acknowledgment that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Section 50(a)(6)(B), Article XVI, Texas Constitution, if applicable, or is not secured by property described in Section 50(a)(6)(H), Article XVI, Texas Constitution; (iii) sending Borrower a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting Borrower's account to ensure that Borrower is not required to pay more than an amount permitted by Section 50(a)(6), Article XVI, Texas Constitution, and neither Borrower nor Owner is subject to any other term or provision prohibited by Section 50, Article XVI, Texas Constitution; (iv) delivering the required documents to Owner if Lender fails to comply with Section 50(a)(6)(Q)(v), Article XVI, Texas Constitution, or obtaining the appropriate signatures if Lender fails to comply with Section 50(a)(6)(Q)(ix), Article XVI, Texas Constitution; (v) sending Borrower a written acknowledgement, if the failure to comply is prohibited by Section 50(a)(6)(K), Article XVI, Texas Constitution, that the accrual of interest and all of Borrower's obligations under the extension of credit are abated while any prior lien prohibited under Section 50(a)(6)(K) remains secured by the homestead; or (vi) if the failure to comply cannot be cured by any of the means set forth above within this paragraph, curing the failure to comply by a refund or credit to Borrower of $1,000.00 and offering Borrower the right to refinance the Indebtedness with Lender for the remaining term of the Indebtedness at no cost to Borrower on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with Section 50(a)(6), Article XVI, Texas Constitution, or on terms on which Lender and Owner otherwise agree that comply with Section 50(a)(6), Article XVI, Texas Constitution; and (K) Lender shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Section 50(a)(6)(P), Article XVI, Texas Constitution or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, if married, unless each owner and each owner's spouse who did not initially consent subsequently consents.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Homestead Lien Contract:

**Amendments.** What is written in this Homestead Lien Contract and in the Related Documents is Owner's entire agreement with Lender concerning the matters covered by this Homestead Lien Contract. To be effective, any change or amendment to this Homestead Lien Contract must be in writing and must be signed by whoever will be bound or obligated by the charge or amendment.

**Governing Law. This Homestead Lien Contract is subject to and will be governed first by Sections 50(a)(6) and (e) - (i), Article XVI, of the Texas Constitution, then federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas. This Homestead Lien Contract has been accepted by Lender in the State of Texas.**

**Caption Headings.** Caption headings in this Homestead Lien Contract are for convenience purposes only and are not to be used to interpret or define the provisions of this Homestead Lien Contract.

**Joint and Several Liability.** All obligations of Borrower and Owner under this Homestead Lien Contract shall be joint and several, and all references to Owner shall mean each and every Owner, and all references to Borrower shall mean each and every Borrower. This means that each Owner signing below is responsible for all obligations in this Homestead Lien Contract.

**Merger.** There shall be no merger of the interest or estate created by this Homestead Lien Contract with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**No Waiver by Lender.** Owner understands Lender will not give up any of Lender's rights under this Homestead Lien Contract unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Owner will not have to comply with the other provisions of this Homestead Lien Contract. Owner also understands that if Lender does consent to a request, that does not mean that Owner will not have to get Lender's consent again if the situation happens again. Owner further understands that just because Lender consents to one or more of Owner's requests, that does not mean Lender will be required to consent to any of Owner's future requests. Owner waives presentment, demand for payment, protest, notice of dishonor, notice of intent to accelerate, and notice of acceleration.

**Savings Clause.** The Indebtedness will conform strictly to the provisions of the Texas Constitution applicable to extensions of credit as defined by Texas Constitution, Article XVI, Section 50(a)(6). It is agreed that notwithstanding any provision of this Homestead Lien Contract to the contrary, in no event shall this Homestead Lien Contract or any other document executed in connection herewith require or permit any action which would be prohibited by Section 50(a)(6), Art. XVI, Texas Constitution, and all provisions of this Homestead Lien Contract shall be modified to comply fully with Section 50(a)(6), Art. XVI, Texas Constitution as set out in Texas Constitution, Article XVI, Section 50(a)(6) or other applicable law. In particular, this section means (among other things), that Owner does not agree or intend to pay, and Lender does not agree or intend to contract for, charge or collect, any amount in the nature of a fee or charge for the Indebtedness which would in any way or event cause Lender to charge or collect more for extension of credit than the maximum Lender would be permitted to charge or collect by the laws of the State of Texas.

**Severability.** If a court finds that any provision of this Homestead Lien Contract is not valid or should not be enforced, that fact by itself will not mean that the rest of this Homestead Lien Contract will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Homestead Lien Contract even if a provision of this Homestead Lien Contract may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Homestead Lien Contract on transfer of Owner's interest, this Homestead Lien Contract shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Owner, Lender, without notice to Owner, may deal with Owner's successors with reference to this Homestead Lien Contract and the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Homestead Lien Contract.

**Waive Jury. All parties to this Homestead Lien Contract hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following words shall have the following meanings when used in this Homestead Lien Contract:

**Borrower.** The word "Borrower" means Aleksandar Musulin.

**Credit Agreement.** The words "Credit Agreement" mean the note or credit agreement dated October 24, 2023, in the principal amount of $55,000.00 from Aleksandar Musulin to Lender, together with all renewals of, extensions of, modifications of, refinancings of,

*L-9040-A000019026530-F000000000000000-P06*

# HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
(Continued)

Loan No: 000 Page 6

consolidations of and substitutions for the note or credit agreement. The maturity date of the Credit Agreement is October 24, 2043. **NOTICE TO OWNER: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.**

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Homestead Lien Contract in the default section of this Homestead Lien Contract.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Homestead Lien Contract.

**Homestead Lien Contract.** The words "Homestead Lien Contract" mean this Homestead Lien Contract and Deed of Trust between Owner and Lender.

**Improvements.** The word "Improvements" means all existing and future improvements, fixtures, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Owner's obligations or expenses incurred by Lender to enforce Owner's obligations under this Homestead Lien Contract, together with interest on such amounts as provided in this Homestead Lien Contract.

**Lender.** The word "Lender" means Trustmark National Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Owner.** The word "Owner" means Aleksandar Musulin and Elena Yaneva and any and all persons and entities executing this Homestead Lien Contract, including without limitation all Borrowers and Owners named above.

**Property.** The word "Property" means collectively the Real Property and the Improvements. Notwithstanding language in any other agreement with Lender by Owner, the Indebtedness is secured by the Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Homestead Lien Contract.

**Related Documents.** The words "Related Documents" mean all promissory notes, loan agreements, environmental agreements, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Trustee.** The word "Trustee" means Michael A. King, whose address is P. O. Box 291, Jackson, MS 39205, and any substitute or successor trustees.

**OWNER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS HOMESTEAD LIEN CONTRACT, AND OWNER AGREES TO ITS TERMS. THIS HOMESTEAD LIEN CONTRACT IS MADE OF OWNER'S OWN FREE WILL AND EACH OWNER AND SPOUSE OF EACH OWNER OF THE HOMESTEAD ARE SIGNING THIS HOMESTEAD LIEN CONTRACT. OWNER ACKNOWLEDGES THAT ALL BLANKS WERE FILLED IN PRIOR TO OWNER SIGNING THIS HOMESTEAD LIEN CONTRACT. OWNER FURTHER ACKNOWLEDGES THAT OWNER RECEIVED A COPY OF THE DISCLOSURES REQUIRED BY SECTION 50(g), ARTICLE XVI, TEXAS CONSTITUTION, AT LEAST 12 DAYS PRIOR TO THE DATE OF THIS HOMESTEAD LIEN CONTRACT.**

**PURSUANT TO SECTION 50(a)(6)(N), ARTICLE XVI, TEXAS CONSTITUTION, THIS HOMESTEAD LIEN CONTRACT MUST BE AND HAS BEEN SIGNED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW, OR A TITLE COMPANY.**

**OWNER:**

X [signature] Aleksandar Musulin

X [signature] Elena Yaneva

## INDIVIDUAL ACKNOWLEDGMENT

BEVERLY A. DEVENPORT
NOTARY PUBLIC
STATE OF TEXAS
ID 12414134-8
EXP 08-11-2026

STATE OF Texas )
) SS
COUNTY OF Harris )

This instrument was acknowledged before me on October 24, 20 23 by Aleksandar Musulin and Elena Yaneva.

[signature]
Notary Public, State of Texas

# VOLUNTARY DESIGNATION OF HOMESTEAD

**RECORDATION REQUESTED BY:**
Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**WHEN RECORDED MAIL TO:**
Trustmark National Bank
Attn: Loan Operations
P. O. Box 1182
Jackson, MS 39215-1182

**SEND TAX NOTICES TO:**
Aleksandar Musulin
Elena Yaneva
2319 Perkins Crossing Drive
Conroe, TX 77304

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

*L-7110-A000019026530-F0000000000000000-P01*

## TO BE RECORDED WITH THE COUNTY CLERK OF MONTGOMERY COUNTY

This VOLUNTARY DESIGNATION OF HOMESTEAD is made by Aleksandar Musulin, Head of the Family and Elena Yaneva, Spouse of the Head of the Family (whether one or more, "Designator").

Designator hereby designates the following described property ("Property") as the homestead of the Designator: LOT THIRTY (30), IN BLOCK ONE (1) OF THE FINAL PLAT OF TEAS LAKES, SECTION THREE (3), A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN CABINET W, SHEET 188 OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS..

Designator hereby certifies that the names of the current record title holders of the Property are Aleksandar Musulin and Elena Yaneva.

Designator hereby certifies that the Property contains 0.27 acre(s), according to the survey of the Property.

**EACH UNDERSIGNED DESIGNATOR ACKNOWLEDGES HAVING READ ALL OF THE PROVISIONS OF THIS VOLUNTARY DESIGNATION OF HOMESTEAD, AND HAVING RECEIVED A COPY OF THIS VOLUNTARY DESIGNATION OF HOMESTEAD. THIS VOLUNTARY DESIGNATION OF HOMESTEAD IS DATED OCTOBER 24, 2023.**

**DESIGNATOR:**

X [signature] Aleksandar Musulin

X [signature] Elena Yaneva

STATE OF Texas )
) SS
COUNTY OF Harris )

[Seal: BEVERLY A. DEVENPORT NOTARY PUBLIC STATE OF TEXAS ID 12414134-8 EXP. 08-11-2026]

Sworn to and subscribed before me on the 24 day of October, 2023 by Aleksandar Musulin and Elena Yaneva.

[signature]
Notary Public, State of Texas

*L-7110-A000019026530-F0000000000000000-P02*

# VOLUNTARY DESIGNATION OF HOMESTEAD
## (Continued)



LaserPro, Ver. 22.4.0.056 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX E:\HFS\CFI\LPL\G06C.FC TR-275669 PR-806

*L-5073-A000019026530-F0000000000000000-R01*

# NOTICE OF RIGHT TO CANCEL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

## Your Right To Cancel

Lender has agreed to establish an open-end credit account for you, and you have agreed to give Lender a deed of trust on your home as security for the account. You have a legal right under federal law to cancel the account without cost, within three (3) business days from whichever of the following events occurs last:

(A) the date of the opening of your account which is **October 24, 2023**; or

(B) the date you received your Truth in Lending disclosures; or

(C) the date you received this notice of your right to cancel the account.

If you cancel your account, the deed of trust on your home is also cancelled. Within twenty (20) calendar days after Lender receives your notice, Lender must take the steps necessary to reflect the fact that the deed of trust on your home has been cancelled, and Lender must return to you any money or property you have given to Lender or to anyone else in connection with this account.

You may keep any money or property Lender has given you until Lender has done the things mentioned above, but you must then offer to return the money or property Lender has given you. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to Lender's address shown below. If Lender does not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

## How to Cancel

If you decide to cancel the account, you may do so by notifying Lender in writing at Trustmark National Bank, Texas Northwest Freeway Branch, 14604 N. W. Freeway, Houston, TX 77040. You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of **October 27, 2023** or midnight of the third (3rd) business day following the latest of the three (3) events listed above. If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

__________ Date

X__________ Aleksandar Musulin

## Acknowledgment of Receipt

**I ACKNOWLEDGE THAT I RECEIVED TWO (2) COPIES OF THIS NOTICE OF RIGHT TO CANCEL AND ONE (1) COPY OF THE TRUTH IN LENDING DISCLOSURES.**

10/24/23 Date

X [signature] Aleksandar Musulin

**INSTRUCTIONS TO LENDER.** This form is for use in credit transactions involving loans of any amount to individuals for personal, family, or household purposes and SECURED BY AN INTEREST IN THE CONSUMER'S CURRENT PRINCIPAL RESIDENCE, except PURCHASE MONEY LIENS. Two (2) copies of a separate Notice of Right to Cancel form, together with a copy of the Truth in Lending disclosure, must be given to each person who has an ownership interest in the residence, even if the person does not sign the note.

LaserPro, Ver. 22.4.0.018 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX [illegible] TR-275693 PR-800

*L-5073-A000019026530-F0000000000000000-P01*

# NOTICE OF RIGHT TO CANCEL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**Grantor:** Elena Yaneva
2319 Perkins Crossing Drive
Conroe, TX 77304

## Your Right To Cancel

Lender has agreed to establish an open-end credit account for you, and you have agreed to give Lender a deed of trust on your home as security for the account. You have a legal right under federal law to cancel the account without cost, within three (3) business days from whichever of the following events occurs last:

(A) the date of the opening of your account which is October 24, 2023; or

(B) the date you received your Truth in Lending disclosures; or

(C) the date you received this notice of your right to cancel the account.

If you cancel your account, the deed of trust on your home is also cancelled. Within twenty (20) calender days after Lender receives your notice, Lender must take the steps necessary to reflect the fact that the deed of trust on your home has been cancelled, and Lender must return to you any money or property you have given to Lender or to anyone else in connection with this account.

You may keep any money or property Lender has given you until Lender has done the things mentioned above, but you must then offer to return the money or property Lender has given you. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to Lender's address shown below. If Lender does not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

## How to Cancel

If you decide to cancel the account, you may do so by notifying Lender in writing at Trustmark National Bank, Texas Northwest Freeway Branch, 14604 N. W. Freeway, Houston, TX 77040. You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of October 27, 2023 or midnight of the third (3rd) business day following the latest of the three (3) events listed above. If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL.

______________ Date      X______________ Elena Yaneva

## Acknowledgment of Receipt

I ACKNOWLEDGE THAT I RECEIVED TWO (2) COPIES OF THIS NOTICE OF RIGHT TO CANCEL AND ONE (1) COPY OF THE TRUTH IN LENDING DISCLOSURES.

10/24/23 Date      X [signature] Elena Yaneva

**INSTRUCTIONS TO LENDER.** This form is for use in credit transactions involving loans of any amount to individuals for personal, family, or household purposes and SECURED BY AN INTEREST IN THE CONSUMER'S CURRENT PRINCIPAL RESIDENCE, except PURCHASE MONEY LIENS. Two (2) copies of a separate Notice of Right to Cancel form, together with a copy of the Truth In Lending disclosure, must be given to each person who has an ownership interest in the residence, even if the person does not sign the note.

LaserPro, Ver. 23.4.0.050 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX [illegible]

*L-9350-A000019026530-F0000000000000000-P01*

# ERRORS AND OMISSIONS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**Grantor:** Elena Yaneva
2319 Perkins Crossing Drive
Conroe, TX 77304

**PROPERTY ADDRESS:** 2319 Perkins Crossing Drive, Conroe, TX 77304; 2319 Perkins Crossing Drive, Conroe, TX 77304
**LOAN NO.:** 000

The undersigned Grantor for and in consideration of the above-referenced Lender funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Federal Housing Authority or the Department of Veterans Affairs.

The undersigned Grantor does hereby so agree and covenant in order to assure that this loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to said loan documentation.

DATED effective this October 24, 2023.

**GRANTOR:**

X ______________________________
Elena Yaneva

LaserPro, Ver. 23.4.0.555 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX

*L-9350-A000019026530-F0000000000000000-P01*

# ERRORS AND OMISSIONS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**PROPERTY ADDRESS:** 2319 Perkins Crossing Drive, Conroe, TX 77304; 2319 Perkins Crossing Drive, Conroe, TX 77304
**LOAN NO.:** 000

The undersigned Borrower for and in consideration of the above-referenced Lender funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Federal Housing Authority or the Department of Veterans Affairs.

The undersigned Borrower does hereby so agree and covenant in order to assure that this loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to said loan documentation.

DATED effective this **October 24, 2023**

**BORROWER:**

X ______________________________
Aleksandar Musulin

LaserPro, Ver. 23.4.0.006 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX E:\HFS\CFI\LPL\I26.FC TR-275469 PR-800

*L-9025-A000019026530-F0000000000000000-P01*

# ACKNOWLEDGMENT OF FAIR MARKET VALUE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**Owner:** Aleksandar Musulin
Elena Yaneva
2319 Perkins Crossing Drive
Conroe, TX 77304

Owner: Aleksandar Musulin and Elena Yaneva
Lender: Trustmark National Bank
Property: 2319 Perkins Crossing Drive, Conroe, TX 77304

Date of Extension of Credit: October 24, 2023
Fair Market Value: $275,000.00

For the purposes of Section 50(a)(6), Article XVI, Texas Constitution, the above named Owner and Lender agree that the referenced property ("Property") has the fair market value ("FMV") stated above as of the date noted.

It is the intention of Owner and Lender that Lender or an assignee for value may conclusively rely on the FMV stated above.

We represent and warrant, with the intention and knowledge that Lender and any assignee may and will rely on same, that we have no knowledge of any condition, proceeding, defect, casualty, or any other matter now or potentially existing which would affect the FMV.

**EACH UNDERSIGNED OWNER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ACKNOWLEDGMENT OF FAIR MARKET VALUE AND HAVING RECEIVED A COPY OF THIS ACKNOWLEDGMENT OF FAIR MARKET VALUE. THIS ACKNOWLEDGMENT OF FAIR MARKET VALUE IS DATED OCTOBER 24, 2023.**

OWNER:

X ______________________
Aleksandar Musulin

X ______________________
Elena Yaneva

TRUSTMARK NATIONAL BANK

By: ______________________
Authorized Signer

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF Texas )
) SS
COUNTY OF Harris )

BEVERLY A. DEVENPORT NOTARY PUBLIC STATE OF TEXAS ID 12414134-8 EXP 08-11-2026

This instrument was acknowledged before me on October 24, 20 23 by Aleksandar Musulin and Elena Yaneva.

______________________
Notary Public, State of Texas

*L-9025-A000019026530-F0000000000000000-P02*

**Loan No: 000**

## ACKNOWLEDGMENT OF FAIR MARKET VALUE
**(Continued)**



BEVERLY A. DEVENPORT
NOTARY PUBLIC
STATE OF TEXAS
ID 12414134-8
EXP. 08-11-2026

## LENDER ACKNOWLEDGMENT

**STATE OF** Texas )
) **SS**
**COUNTY OF** Harris )

This instrument was acknowledged before me this 24 day of October, 20 23 by L. Liberto Trejo as Branch Manager of Trustmark National Bank.

[signature]
Notary Public, State of Texas

LaserPro, Ver. 22.4.0.058 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX E:\HFS\CFI\LPL\G06A.FC TR-270618 PR-606

*L-9095-A000019026530-F0000000000000000-P01*

# AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $55,000.00 | 10-24-2023 | 10-24-2043 | 000 | 80 | | 66728 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Aleksandar Musulin
2319 Perkins Crossing Drive
Conroe, TX 77304

**Lender:** Trustmark National Bank
Texas Northwest Freeway Branch
14604 N. W. Freeway
Houston, TX 77040

**Grantor:** Aleksandar Musulin
Elena Yaneva
2319 Perkins Crossing Drive
Conroe, TX 77304

**INSURANCE REQUIREMENTS.** We, Aleksandar Musulin and Elena Yaneva ("Grantor"), understand that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to Aleksandar Musulin ("Borrower") by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

**Collateral:** 2319 Perkins Crossing Drive, Conroe, TX 77304.
**Type:** Fire and extended coverage.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** TRUSTMARK NATIONAL BANK; and further stipulating that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
**Latest Delivery Date:** By the loan closing date.

**INSURANCE COMPANY.** We may obtain insurance from any insurance company we may choose that is reasonably acceptable to Lender. We understand that credit may not be denied solely because insurance was not purchased through Lender.

**FLOOD INSURANCE.** Flood Insurance for the Collateral securing this loan is described as follows:

**Real Estate at 2319 Perkins Crossing Drive, Conroe, TX 77304.**
The Collateral securing this loan is not currently located in an area identified as having special flood hazards. Therefore, no special flood hazard insurance is necessary at this time. Should the Collateral at any time be deemed to be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, we agree to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Collateral is located in a special flood hazard area, for the maximum amount of Borrower's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**INSURANCE MAILING ADDRESS.** All documents and other materials relating to insurance for this loan should be mailed, delivered or directed to the following address:

Trustmark National Bank
Attn: Loan Operations
P. O. Box 1182
Jackson, MS 39215-1182

**FAILURE TO PROVIDE INSURANCE.** We agree to deliver to Lender, on the latest delivery date stated above, evidence of the required insurance as provided above, with an effective date of October 24, 2023, or earlier. Borrower and we acknowledge and agree that if we fail to provide any required insurance or fail to continue such insurance in force, Lender may do so at Borrower's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. WE ACKNOWLEDGE THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL; HOWEVER, OUR EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

If such insurance purchased by Lender is procured at a rate or charge not fixed or approved by the State Board of Insurance, we will be so notified, and we may at any time cause the cancellation of collateral protection insurance by providing proper evidence to Lender that we have obtained insurance as required by the security document.

**Texas Creditor-Placed Insurance Notice:** Grantors are required to keep the Collateral insured against damage in the amount specified by Lender. Grantors will purchase the insurance from an insurer that is authorized to do business in Texas or an eligible surplus lines insurer. Lender shall be named as the person to be paid under such policy in the event of loss. If required by Lender, Grantors must deliver a copy of the policy and proof of the payment of premiums to Lender. If Grantors fail to meet any of these requirements, Lender may, but does not have to, obtain collateral protection insurance on Grantor's behalf at Grantor's expense.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, we authorize Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

*L-9095-A000019026530-F0000000000000000-P02*

# AGREEMENT TO PROVIDE INSURANCE
## (Continued)

**Loan No: 000** **Page 2**

**BORROWER AND WE ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED OCTOBER 24, 2023.**

**GRANTOR:**

X ______________________________
Aleksandar Musulin

X ______________________________
Elena Yaneva

**BORROWER:**

X ______________________________
Aleksandar Musulin

**FOR LENDER USE ONLY**
**INSURANCE VERIFICATION**

DATE: ______________________ PHONE ______________________

AGENT'S NAME: ______________________
AGENCY: ______________________
ADDRESS: ______________________
INSURANCE COMPANY: ______________________
POLICY NUMBER: ______________________
EFFECTIVE DATES: ______________________
COMMENTS: ______________________

LaserPro, Ver. 22.4.0.056 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - TX L:\CFI\LPL\I01C.FC TR-375683 PR-600

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY
Evidence Of Insurance

Policy Number: 429619985

First Mortgagee Loan Number : 1320222273
Second Mortgagee Loan Number : 902653

**Insured's Information**
ALEKSANDAR MUSULIN & ELENA YANEVA
2319 PERKINS CROSSING DR
CONROE , TX 77304

**Location of property insured**
2319 PERKINS CROSSING DR
CONROE , TX 77304

**Mortgagees (listed in order of precedence)/Additional Interested Parties**

JPMORGAN CHASE BANK NA ISAOA ATIMA
P O BOX 4465
SPRINGFIELD , OH 45501

TRUSTMARK NATIONAL BANK ATTN LOAN OPERATIONS
PO BOX 1182
JACKSON , MS 39215

Policy period beginning on 11/25/2022 through 11/25/2023 at 12:01 A.M. Standard Time.

**Coverage detail for the property insured**

POLICY TYPE - House & Home

Policy Limit of Liability
Section I Dwelling Protection $243617

Total Annual Policy Premium $1471.97
Replacement Cost up to the Dwelling Covg Limits
(Note: This policy contains a payment schedule for wind and hail roof surface claims.)

Personal Property Reimbursement

**Deductibles**
$500 Water Back-Up
2% Windstorm and Hail
Tropical Cyclone 2% of Dwelling Protection Limit
1% of Dwelling Protection Limit to loss to the covered property from other insured perils.

**Provisions:**
This Evidence of Insurance is issued as a matter of information only and confers no rights upon the additional interest named below. This Evidence of Insurance does not amend, extend or alter the coverage afforded by the policies above. This form is not the contract of insurance. The provisions of the policy shall prevail in all respects.

All premiums for the insurance policy shall be computed in accordance with Allstate's rules, forms, premiums and minimum premiums applicable to the insurance afforded which are in effect at the

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY
Evidence Of Insurance

---

Policy Number: 429619985
inception of the insurance and upon each anniversary thereof, including the date of interim changes.

It is understood that if this insurance protection terminates for any reason, due notice will be given to the insured, to the mortgagee, and to all other interested parties in accordance with the standard mortgagee clause.

A copy of the Policy Declarations reflecting the annual premium will be sent, if required, to the mortgagee and to any other interested parties.

Date: 10/09/2023

Countersigned at: GARLAND

Authorized Agent:
Christina Adcock
245 Cedar Sage Dr. Suite 230
GARLAND , TX 75040
(972) 495 - 7788

Agent Signature

---

Lenders :

Please do not make a payment from this document. Only pay from a policy invoice. All payments should be forwarded to:

Lender Relations
P. O. Box 660649
Dallas, TX 75266

Lender Relations Overnight Address :
Lender Relations
8711 Freeport Parkway North
Mail Station 4A
Irving, TX 75063

# EXHIBIT B

**August 27, 2026 Account Screenshot**

Showing “Amount Currently Due” of $0.00


17:46
August 27
02:02
Good Morning, ALEKSANDAR
Financial Tools
Get Started
ACCOUNTS
$6.05
LOC 014707
$0.00
Link External Account
banks and credit unions.

# EXHIBIT C

## Trustmark's August 27, 2026 Letter

Demanding 2% Principal-and-Interest Payments

Trustmark

P. O. Box 1182
Jackson, MS 39205-0291
Trustmark.com

August 27, 2026

Aleksandar Musulin
2319 Perkins Xing Dr
Conroe, TX 77304

Re: Equity Line of Credit – Account Number #00009596014707

Dear Mr. Musulin,

This letter is to notify you that pursuant to the terms and conditions of the "Trustmark Interest Only Equity Line Agreement" executed by you on October 24, 2023, Trustmark is exercising the rights provided to the bank under the agreement to require a 2% minimum payment (regular payment) per month on the above referenced account. The action being taken is effective immediately and will be reflected in the billing statement you receive in September 2026 for the August 2026 billing period. The 2% minimum payment (regular payment) is computed on the average daily balance including any accrued interest. This change in minimum payment (regular payment) will be effective for the remaining term of your account.

The actions outlined above are being taken in accordance with the sections "Suspension or Reduction" and "Additional Suspension Language" of your "Trustmark Interest Only Equity Line Agreement" dated October 24, 2023. Specific reference is made to material adverse change in financial condition and the following language: "If your ability to obtain extensions of credit has been halted or your credit limit reduced, at the bank's option, you will be required to make minimum monthly payments of both principal and finance charge of at least 2% of the outstanding balance of your account".

Accompanying this notice is also a "Fair Credit Reporting and Equal Opportunity Act Notice" reflecting balance availability under the Equity Line Agreement has been suspended. Principal reasons for this Adverse Action are also indicated.

If you have any questions regarding the billing change as outlined or you have any future billing questions you may contact us at the below address.

Trustmark
P. O. Box 1182
Jackson, MS 39205

# EXHIBIT D

**Trustmark's September 5, 2026 Letter**

Demanding the $274.28 Disputed Amount

**Trustmark**

Trustmark
Special Assets
Department
P.O. Box 291
Jackson, MS 39205-0291

|||13343383||||
ALEKSANDAR MUSULIN
2319 PERKINS CROSSING DRIVE
CONROE,TX 77304

September 5, 2026

Re: Account #: XXXXXXXXXXXX4707
Amount Past Due: $274.28
Late Fees Due: $0.00

Dear ALEKSANDAR MUSULIN:

Our records indicate that your account payment has not been received as of the above date. We realize that, at times, an oversight may occur. This may be the reason why we have not received the above reference account payment. If you have already submitted payment, please disregard this notice. In the event you have not paid, for your convenience you can visit our payment site at www.trustmark.com and click on Loan Payments under the Personal Tab. You will need your bank routing number and checking or savings account number to utilize this service. You can also pay by phone with an agent at 1.800.222.8025. If circumstances havew prevented you from making a payment at this time please contact us to discuss payment arrangements as soon as possible. Trustmark values your business and looks forward to servicing your financial needs in the future.

**To speak with an agent regarding your account status or available payment options:**
Dial: 1-800-222-8025

**TTY for the hearing impaired:**
Dial: 1-800-582-2233

**Mailing Address:**
**Info/Error resolution requests**
P.O. Box 153
Jackson, MS 39205

**To inquire about benefits under the Servicemembers Civil Relief Act:**
Dial: 1-866-229-1656

**Ask about our convenient online payment options or visit www.trustmark.com for more information.**
**When entering your account number, do not include any dashes or leading zeroes. (I.e., do not enter 00000010-1001234567, instead enter 101001234567.*

**Receive and Pay a Bill with your Smartphone's Mobile Wallet!**

Sign up only requires your account number, your 5-digit zip code and a few steps to add a pass for your account to your mobile wallet, which a native app on your smartphone. Scan the QR code below to get started.

This is an attempt to collect a debt and any information obtained will be used for that purpose. Please disregard this notice if this debt has been, or is currently, included in a bankruptcy.

Alek Mirko Mason and Elena Yancheva Yaneva
14132 FM 1097 Road West, Suite 300 PMB 1030
Willis, Texas 77318
Telephone: (830) 830-6374
Email: amason.litigation@gmail.com

September 25, 2026

Nathan Ochsner, Clerk of Court
United States District Court
Southern District of Texas, Houston Division
Bob Casey United States Courthouse
515 Rusk Avenue, Room 5300
Houston, Texas 77002

**Re: Mason and Yaneva v. Trustmark Bank — New Civil Action**

Dear Clerk of Court:

Enclosed is a $405 money order for the civil filing fee and then for filing are the Civil Cover Sheet (JS 44), a proposed summons for the Clerk's review and issuance, our Original Complaint against Trustmark Bank and Exhibits A through D. Please open this as a new civil action in the Houston Division and assign a case number.

Please direct notices and correspondence for both plaintiffs to the address listed above.

Respectfully submitted,

______________________________

Alek Mirko Mason, Plaintiff, pro se

______________________________

Elena Yancheva Yaneva, Plaintiff, pro se